**2023-2230**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

ABIGAIL STRATTON,

*Petitioner-Appellee*,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

*Respondent-Appellant*.

Appeal from a judgment of the United States Court of Federal Claims
in Case No. 20-1515V, Carolyn N. Lerner

# BRIEF OF RESPONDENT-APPELLANT SECRETARY OF HEALTH AND HUMAN SERVICES

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

C. SALVATORE D'ALESSIO
Director
Torts Branch, Civil Division

HEATHER L. PEARLMAN
Deputy Director
Torts Branch, Civil Division

VORIS E. JOHNSON, JR.
Senior Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice, P.O. Box 146
Benjamin Franklin Station
Washington, D.C. 20044-0146
Tel: (202) 616-4136
voris.johnson@usdoj.gov

October 2, 2023

Attorneys for Respondent-Appellant

# TABLE OF CONTENTS

I. STATEMENT OF RELATED CASES............................................................1

II. STATEMENT OF JURISDICTION..................................................................1

III. STATEMENT OF THE ISSUES ......................................................................2

IV. STATEMENT OF THE CASE ..........................................................................2

A. Statutory Scheme: National Childhood Vaccine Injury Act.........................2

B. Relevant Facts ..................................................................................................5

C. Procedural History ...........................................................................................9

V. SUMMARY OF THE ARGUMENT ...............................................................15

VI. STANDARD OF REVIEW.............................................................................16

VII. ARGUMENT ..................................................................................................16

A. The Chief Special Master and the CFC Both Applied an Incorrect Reasonable Basis Standard.........................................................................19

B. The Objective Record Evidence Does Not Establish A Reasonable Basis For Stratton's Claim ..........................................................................26

VIII. CONCLUSION..............................................................................................31

ADDENDUM …………………………………………………………………34

# TABLE OF AUTHORITIES

## CASES

*A.F. v. Sec'y, HHS*,
No. 19-446V, 2023 WL 251948 (Fed. Cl. Spec. Mstr. Jan. 18, 2023) ......... 13, 29

*Althen v. Sec'y, HHS*,
418 F.3d 1274 (Fed. Cir. 2005) ........................................................... 23, 24

*Atjian v. Sec'y, HHS*,
No. 21-1413V, 2022 WL 17587757 (Fed. Cl. Spec. Mstr. Oct. 18, 2022).. 11, 12, 17, 21

*Balasco v. Sec'y HHS*,
No. 17-215V, 2020 WL 1240917 (Fed. Cl. Spec. Mstr. Feb. 14, 2020)................8

*Boyd v. Apfel*,
239 F.3d 698 (5th Cir. 2001) ..........................................................................19

*Buford v. UNUM Life Ins. Co. of Am.*,
290 F.Supp.2d 92 (D.D.C. 2003)......................................................................19

*C.F. v. Sec'y, HHS*,
No. 15-731V, 2023 WL 2198809 (Fed. Cl. Spec. Mstr. Jan. 20, 2023) .............30

*Cloer v. Sec'y, HHS*,
675 F.3d 1358 (Fed. Cir. 2012) .......................................................................17

*Contreras v. Sec'y, HHS*,
No. 19-491V, 2022 WL 1580602 (Fed. Cl. Mar. 10, 2022) ...............................28

*Cottingham v. Sec'y, HHS,*
971 F.3d 1337 (Fed. Cir. 2020) ........................................................... passim
154 Fed. Cl. 790 (2021)....................................................................................19
2021 WL 6881248 (Fed. Cl. Spec. Mtr. Sept. 27, 2021) ............................. 26, 29
159 Fed. Cl. 328 (2022),
*appeal docketed*, No. 22-1737 (Fed. Cir. Apr. 28, 2022)..................... 1, 24, 26

*Crowding v. Sec'y, HHS*,
No. 16-876V, 2019 WL 1332797 (Fed. Cl. Spec. Mstr. Feb. 26, 2019)..............20

*Fetters v. Sec'y, HHS*,
No. 21-928V, 2023 WL 2337471 (Fed. Cl. Spec. Mstr. Feb. 9, 2023)................22
*Aff'd*, 166 Fed. Cl. 189 (2023)..........................................................................22

*Goodgame v. Sec'y, HHS*,
157 Fed. Cl. 62 (2021)........................................................................... 24, 25

*Grice v. Sec'y, HHS*,
36 Fed. Cl. 114 (1996).............................................................................20

*Hines v. Sec'y, HHS*,
940 F.2d 1518 (Fed. Cir. 1991).............................................................3

*Humphries v. Sec'y, HHS*,
No. 17-288V, 2021 WL 1733512 (Fed. Cl. Spec. Mstr. Apr. 9, 2021)...............30

*James-Cornelius v. Sec'y, HHS*,
984 F.3d 1374 (Fed. Cir. 2021)............................................................ 16, 17, 19

*Lampe v. Sec'y, HHS*,
219 F.3d 1357 (Fed. Cir. 2000)............................................................16

*Leonard v. Southwestern Bell Corp. Disability Income Plan,*
341 F.3d 696 (8th Cir. 2003)..............................................................19

*Levy v. Sec'y, HHS*,
No. 20-1791V, 2023 WL 2339634 (Fed. Cl. Spec. Mstr. Mar. 3, 2023).............22
*Aff'd,* 2023 WL 6143219 (Fed. Cl. June 26, 2023)............................................22

*Marion v. Sec'y, HHS*,
No. 19-0495V, 2022 WL 2223145 (Fed. Cl. Spec. Mstr. May 9, 2022).............22

*McKellar v. Sec'y, HHS*,
101 Fed. Cl. 297 (2011)..........................................................................20

*Moberly v. Sec'y, HHS*,
592 F.3d 1315 (Fed. Cir. 2010)........................................................... 16, 31

*Munn v. Sec'y, HHS*,
970 F.2d 863 (Fed. Cir. 1992) .......................................................................16

*Orm v. Sec'y, HHS*,
No. 14-257V, 2022 WL 1210632 (Fed. Cl. Spec. Mstr. Mar. 29, 2022) ............30

*Sedar v. Reston Town Ctr. Prop., LLC*,
988 F.3d 756 (4th Cir. 2021) .......................................................................19

*Sheller v. Sec'y, HHS*,
164 Fed. Cl. 398 (2023),
*appeal docketed*, No. 23-1746 (Fed. Cir. Apr. 12, 2023) .................... 1, 23, 25

*Simmons v. Sec'y, HHS*,
875 F.3d 632 (Fed. Cir. 2017) ..................................................................... 17, 18

*Terran v. Sec'y, HHS*,
195 F.3d 1302 (Fed. Cir. 1999) .......................................................................2

*Turkupolis v. Sec'y, HHS*,
No. 10-351V, 2014 WL 2872215 (Fed. Cl. Spec. Mstr. May 30, 2014) ............30

**FEDERAL STATUTES, RULES, AND REGULATIONS**

28 U.S.C. § 1295 .......................................................................................1

National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 .....1

42 U.S.C. § 300aa-1 .......................................................................................2

42 U.S.C. § 300aa-10 .....................................................................................2

42 U.S.C. § 300aa-11 ............................................................................. passim

42 U.S.C. § 300aa-12 ............................................................................. passim

42 U.S.C. § 300aa-13 ...............................................................................3, 29

42 U.S.C. § 300aa-14 .....................................................................................3

42 U.S.C. § 300aa-15 ........................................ 4, 16, 17, 21

42 U.S.C. § 300aa-21 ........................................ 9, 10

42 C.F.R. § 100.3 ........................................ 3, 18, 23

FRAP 4(a)(1)(B) ........................................ 2

## I. STATEMENT OF RELATED CASES

No appeal in or from this case is currently pending before the Supreme Court, this Court, or any other Circuit Court of Appeals. To the knowledge of Respondent-Appellant, the Secretary of Health and Human Services (the "Secretary"), no case(s) currently pending in this or any other tribunal will directly affect, or be directly affected by, this Court's decision in this appeal.[1]

## II. STATEMENT OF JURISDICTION

This case was filed under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34, as amended ("Vaccine Act" or "Act"). The Vaccine Act authorizes appeal from a judgment of the Court of Federal Claims ("CFC") to this Court. 42 U.S.C. § 300aa-12(f). Further, this Court has "exclusive jurisdiction . . . of an appeal from a final decision of the [CFC]." 28 U.S.C. § 1295(a)(3). The CFC entered its final decision and judgment on May 31, 2023. Appx1; Appx9-18. The Secretary timely filed his Notice of Appeal on July 28,

---

[1] While not technically related cases, there are two appeals currently pending before the Court (*Cottingham*, No. 2022-1737, and *Sheller*, No. 2023-1746, both discussed *infra*) that involve issues arising from the same statutory provision. The issue in those cases is whether the special master appropriately exercised his discretion in weighing the evidence when evaluating whether the claim had a reasonable basis. The issue here is whether the special masters are required to explain the grounds for their reasonable basis finding. The Court's disposition of the appeals in *Cottingham* and *Sheller* could indirectly affect the resolution of this appeal.

2023, or within sixty days of the entry of judgment by the CFC. FRAP 4(a)(1)(B); 42 U.S.C. § 300aa-12(f).

## III. STATEMENT OF THE ISSUES

The sole issue in this appeal is whether the CFC erred when it upheld the Chief Special Master's finding that Petitioner-Appellee, Abigail Stratton ("Stratton"), established a reasonable basis for her claim and was therefore eligible to receive an award of attorneys' fees and litigation costs under the Vaccine Act.

## IV. STATEMENT OF THE CASE

### A. Statutory Scheme: National Childhood Vaccine Injury Act.

In 1986, Congress enacted the Vaccine Act, thereby establishing a program administered by the Secretary to increase the safety and availability of vaccines. *See* 42 U.S.C. § 300aa-1; *Terran v. Sec'y, HHS*, 195 F.3d 1302, 1307 (Fed. Cir. 1999). The Vaccine Act created the National Vaccine Injury Compensation Program through which claimants could petition the CFC to receive compensation for alleged vaccine-related injuries or death. *See* 42 U.S.C. § 300aa-10(a).

The Vaccine Act also established an Office of Special Masters within the CFC to issue decisions on the petitions for compensation (42 U.S.C. §§ 300aa-12(c)(1), 300aa-12(d)(3)(A)); provides for review of the special masters' decisions

by the CFC (42 U.S.C. § 300aa-12(e)); and allows appeal of the CFC's rulings to this Court. 42 U.S.C. § 300aa-12(f).

To receive compensation, a claimant must prove by preponderant evidence that the vaccinated person received a vaccine covered by the Act and, in addition to other specified factual matters, that the person: (1) suffered an injury or condition (or a significant aggravation of a pre-existing injury or condition) listed on the Vaccine Injury Table, 42 C.F.R. § 100.3 ("Table"), within the requisite time frame listed on the Table, in which case causation is presumed (a "Table injury"); or that the person (2) suffered an injury or condition (or a significant aggravation of a pre-existing injury or condition) not on the Table (a "non-Table injury"), in which case causation must be affirmatively proven ("actual causation" or "causation-in-fact"). *See* 42 U.S.C. §§ 300aa-11(c)(1)(C), 300aa-14; 42 C.F.R. § 100.3 (2008). Under either approach, compensation is awarded only if the special master concludes "that the petitioner has demonstrated by a preponderance of the evidence" the elements of petitioner's prima facie case, and "that there is not a preponderance of the evidence" that the injuries were "due to factors unrelated to the administration of the vaccine." 42 U.S.C. §§ 300aa-13(a)(1)(A)-(B); *see also Hines v. Sec'y, HHS*, 940 F.2d 1518, 1524-25 (Fed. Cir. 1991).

The Vaccine Act also authorizes awards of attorneys' fees and litigation costs to petitioners under specific conditions. The pertinent provision in the Act states:

> In awarding compensation on a petition filed under section 300aa-11 of this title the special master or court shall also award as part of such compensation an amount to cover –
>
> (A) reasonable attorneys' fees, and
>
> (B) other costs,
>
> incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

42 U.S.C. § 300aa-15(e)(1). Under the plain language of this provision, petitioners who fail to establish entitlement to compensation for their alleged vaccine-related injury or death *may* recover their attorneys' fees and costs, but *only* if they establish both that the petition was brought in good faith, and that "there was a reasonable basis for the claim for which the petition was brought." *Id.*

### B. Relevant Facts.[2]

Stratton was born on August 15, 1998. Appx26. Prior to receiving the vaccination at issue, she had numerous medical contacts for complaints of syncope (fainting) or near-syncopal episodes, dizziness, or light-headedness. *See, e.g.*, Appx31-33 (September 8, 2015 telephone call and medical encounter reflecting that Stratton's "coach emailed [mother] because [Stratton] gets fatigue[d] and she almost passed out twice (2 weeks ago and last Saturday"); Appx125-129 (January 15, 2016 emergency room visit at which Stratton reported "feeling lightheaded every morning for the past 4 months; when she goes to get up she almost passes out," and was diagnosed with syncope); Appx34 (January 25, 2016 pediatric visit for a "second episode of dizziness followed by syncope").[3]

In fact, six weeks before receiving the subject vaccination, Stratton presented to East Cooper Medical Center for complaints of intermittent dizziness, vomiting, nausea, and cough. Appx121-124 (September 28, 2017). The records note that she began taking Vyvanse, a drug that treats attention deficit

[2] The Appendix citations in the Secretary's factual summary are to excerpts from the submitted medical records rather than the Chief Special Master's Decision (Appx2-8) or the CFC's Opinion (Appx9-18), since neither the Chief Special Master nor the CFC provided a detailed summary of Stratton's pertinent medical history.

[3] Cardiac testing showed a late ventricular ectopic heartbeat. Appx130.

hyperactivity disorder ("ADHD"), three weeks earlier.[4] Appx121; *see also* Appx43 (questionnaire completed by Stratton indicating that she began taking Vyvanse in September 2017). She was also seen in the emergency room for abdominal pain on July 30, 2017. Appx132-133.

Stratton received the subject vaccination – a human papillomavirus ("HPV") vaccine marketed under the brand name Gardasil by its manufacturer, Merck & Co. ("Merck") – on November 6, 2017, while being evaluated by physicians' assistant ("PA") Vanessa Hajzus, PA-C, for a breast lump. Appx40-41. Over the next eight months, Stratton sought medical treatment for a variety of complaints including feeling as though she had a bug in her ear (November 10, 2017); a sore throat, diagnosed as strep (November 13, 2017); a urinary tract infection, rash, and stomach and back pain (November 27, 2017); dysuria and rash (November 30, 2017); laryngitis (February 6, 2018); sore throat (May 14, 2018 and June 10, 2018; after the latter, a rapid test for mononucleosis was positive); and another urinary tract infection (June 18, 2018). *See* Appx62-95; Appx42. She also had an annual exam with PA Hajzus on January 8, 2018; it was noted at that time that Stratton's

[4] Stratton did not file any records documenting the medical encounter that resulted in Vyvanse being prescribed. The most common side effects of Vyvanse include decreased appetite, diarrhea, dry mouth, trouble sleeping, stomach pain, anxiety, weight loss, dizziness, irritability, nausea, and vomiting. *See* https://www.vyvanse.com/side-effects-adult (last visited Sept. 8, 2023).

bowel movements caused "B[right] R[ed] B[lood] P[er] R[ectum]," which had "[b]een happening for many months," and she was diagnosed with rectal bleeding and dysmenorrhea. Appx38-39. On February 19, 2018, Stratton was seen for a bad headache that started six hours earlier. Appx135. She denied dizziness and was diagnosed with a migraine. Appx135, Appx138.

At her annual examination on January 15, 2019, Stratton told PA Hajzus that "after her first HPV vaccine, she had a reaction and [does not] want to complete the series." Appx35. No further information about this remark is provided. *See* Appx35-37.

In March 2019, Stratton presented to the hospital after experiencing an anxiety attack at school. Appx44. The note indicates that it was worse than her normal panic attacks, and that she had experienced a pre-syncopal sensation. Appx45. Stratton's past medical history was noted to be significant for anxiety, migraines, and constipation, and that she "[h]as had abdominal pain since this past summer." Appx44-45. An electrocardiogram showed an abnormal but "known" P-wave axis. Appx46.

In May 2019, roughly eighteen months post-vaccination, Stratton presented to cardiologist Eric Powers, M.D., at the Medical University of South Carolina ("MUSC"), for an initial evaluation for orthostatic hypotension. Appx47-48. She reported that an ECG performed "several years ago demonstrated an abnormal P

wave," an abnormality that was confirmed two months earlier. Appx48. Stratton told Dr. Powers that her most frequent symptom was occasional orthostatic dizziness, "the same over the last several years." Appx48. She was diagnosed with ectopic atrial rhythm that "was first demonstrated several years ago. It began prior to her current therapy for ADHD." Appx49.

Stratton followed up with Dr. Powers on June 11, 2019. Appx50. She reported that over the past few months her health had been worsening. Appx51. By July, Stratton reported that she had seen "an outside EP [cardiac electrophysiologist] doc" and had been diagnosed with POTS (i.e., postural orthostatic tachycardia syndrome).[5] Appx54. No records from this unidentified "outside EP doc" were filed.

In September 2019, Stratton transferred her gynecological care to MUSC. Appx61. She reported that she was being worked up as an outpatient for POTS (again, no corresponding records were filed), and she "[t]hinks it may be related to her Gardasil vaccine, which she received one dose of, contracted mono, and then started having [cardiovascular] and [gastrointestinal] symptoms." Appx61.

[5] POTS "is a clinical syndrome wherein the body's autonomic nervous system fails to compensate for upright posture." *Balasco v. Sec'y HHS*, No. 17-215V, 2020 WL 1240917, at *17 (Fed. Cl. Spec. Mstr. Feb. 14, 2020). The Chief Special Master's decision in *Balasco* includes a thorough discussion of POTS, how it is diagnosed, and its potential causal mechanisms. *Id*. at *16-25.

### C. Procedural History.

On November 2, 2020, Stratton filed her petition for compensation ("Petition") under the Vaccine Act, claiming that she developed POTS and autonomic dysfunction as a result of the Gardasil vaccine administered to her on November 6, 2017. Appx27. At the outset of the case, Stratton made it clear that she filed her Petition only because she "[was] statutorily compelled to initiate this claim prior to pursuing a cause of action against Merck directly."[6] Appx25.

On November 4, 2020, the Chief Special Master directed Stratton to file, by November 16, 2020, certified copies of certain records required by the Vaccine Act and Vaccine Rules, as well as an affidavit and a medical history questionnaire. Appx20 (ECF No. 5, "PAR Initial Order"). Between November 15 and December 16, 2020, Stratton filed some of the required medical records, as well as the Gardasil Product Monograph (i.e., the product insert). Appx20 (ECF Nos. 6, 8, and 9, attaching Exhibits 1-9). In the following months, Stratton moved for numerous enlargements of time to file the other outstanding records, her affidavit,

[6] The Act provides that "[n]o person may bring a civil action . . . against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, . . . unless a petition has been filed . . . for compensation under the Program for such injury or death," and the petitioner either rejects the Court's judgment and elects to file a civil action under Section 21(a) of the Act, or withdraws the petition pursuant to Section 21(b) of the Act. 42 U.S.C. § 300aa-11(a)(2)(A).

and the medical history questionnaire. Appx20-21 (ECF Nos. 7, 10-15, 17). However, those materials were never filed, other than an additional sixty pages of medical records filed on June 18, 2021. *See* Appx21 (ECF No. 16, attaching Exhibit 10).

Instead, on July 6, 2021, following expiration of the 240-day statutory period for the Chief Special Master's issuance of a decision pursuant to 42 U.S.C. § 300aa-12(d)(3)(A)(ii), Stratton withdrew her petition pursuant to Section 21(b)(1) of the Act. Appx21 (ECF No. 19). Accordingly, on July 8, 2021, the Chief Special Master issued an order concluding the proceedings. Appx21 (ECF No. 20). As a result, the Chief Special Master did not issue a decision, and the clerk did not issue a judgment, dismissing Stratton's claim on the merits.

Four days later, on July 12, 2021, Stratton applied for attorneys' fees and expenses in the total amount of $10,789.96. Appx3; Appx184-191 ("Fee Application"). She also filed a "Statement" (essentially the affidavit she never filed during the merits portion of the proceedings) and several pieces of medical literature about POTS. Appx21-22 (ECF No. 21, attaching Exhibits 11-16). The Secretary objected to the Fee Application on the grounds that Stratton did not file her claim in good faith (because she had no intention of litigating her claim to conclusion in the CFC) or with a reasonable basis (because she provided no objective evidence that she suffered any injury caused by the Gardasil vaccine).

Appx5; Appx192-203 ("Resp. Objection"). Stratton subsequently filed a reply brief and a supplemental fee request for an additional $1,386.00 in attorneys' fees. Appx22 (ECF Nos. 24, 27).

While the instant Fee Application was pending, the Chief Special Master issued a fee decision in another case filed by Stratton's counsel for the sole purpose of pursuing a civil action against Merck.[7] In that case, *Atjian v. Sec'y, HHS*, No. 21-1413V, 2022 WL 17587757 (Fed. Cl. Spec. Mstr. Oct. 18, 2022), the Secretary also objected to the fee application, raising the same good faith and reasonable basis arguments he asserted in this case. The Chief Special Master rejected the Secretary's arguments. On the issue of good faith, the Chief Special Master held:

> Petitioner has demonstrated his subjective belief that he was injured by an HPV vaccine such that he should receive compensation from the Vaccine Program for the injury, and he complied with the procedures set forth by the Act to withdraw his case. His expressed intent to pursue the claim in a different forum and different way does not lessen his view that *otherwise* the claim is meritorious, and I find in any event that the desire to proceed elsewhere (even in the hopes that he is *more* likely to succeed outside of the Program) does not lessen his otherwise-demonstrated belief in the claim's underlying merit *had it been litigated herein*. As such, Petitioner has met the good faith requirement for a fees award.

[7] Stratton's counsel, Mr. Downing, has filed over 300 cases under the Vaccine Act for the sole purpose of withdrawing or dismissing them in order to pursue multi-district litigation ("MDL") against Merck in federal district court (the "Merck MDL cases").

*Id*. at *6 (footnote omitted). On the issue of reasonable basis, the Chief Special Master summarized the submitted medical records, analyzed them, and concluded that the petitioner had "provided enough evidence to satisfy reasonable basis" because, in the Chief Special Master's view, "the records provide objective evidence that might suggest some relationship between [the petitioner's] allergic reaction and his vaccination." *Id*. at *9. However, the Chief Special Master ended with this "one final proviso":

> I have become extremely skeptical of assertions that this particular vaccine [Gardasil] can cause longer-term non-specific symptoms, or otherwise interfere with the autonomic nervous system. It is likely in the future that I will warn petitioners filing such claims that they simply lack scientific support – and therefore efforts to assert them invites a finding that they had no reasonable basis *from their outset*. As a result, if present counsel continues to pass through the Program in present fashion in order to reach his favored forum, he runs the strong risk that I will find *no* fees are warranted – 240-day withdrawal or not. But I will only invoke this admonition in cases *not yet filed*, and thus intend to pay fees in the presently pending matters.

*Id*. at *10 (citation omitted).

With his Decision in this case, the Chief Special Master followed through on his intention "to pay fees in the presently pending matters." *Atjian*, 2022 WL 17587757, at *10. Noting that neither party appealed his decision in *Atjian*,[8] the

[8] The Secretary's choice to appeal (or not appeal) any particular decision is based on any number of factors. The Secretary's choice not to seek review in *Atjian* does not in any way represent a tacit agreement with the decision, or the reasoning stated therein.

Chief Special Master rejected the Secretary's good faith argument here based on the same reasoning articulated in that case – specifically, that good faith is satisfied solely by a petitioner holding an "honest belief" that "the vaccine was injurious" (even though the Chief Special Master acknowledged in his Decision that a review of Vaccine Program case law "reveals the factual unsoundness of that belief").[9] Appx5.

As to reasonable basis, however, the Chief Special Master offered *no* reasoned findings. His Decision includes *no* discussion or summary of the submitted medical records or other evidence, and *no* analysis of whether the submitted evidence establishes a reasonable basis for the particular claim asserted by Stratton in this case. Appx2-8. Instead, the Chief Special Master simply characterized the reasonable basis requirement as "a notably easy-to-satisfy evidentiary standard," and concluded summarily that Stratton "has filed sufficient medical records to satisfy the exceedingly low evidentiary standard at play here." Appx4. Having found the good faith and reasonable basis requirements to be

[9] As the Chief Special Master recently noted: "There are *no* persuasive reasoned Program decisions finding that the HPV vaccine can interfere with any aspect of the nervous system sufficiently to cause *any* form of orthostatic intolerance – whether manifesting as vasovagal syncope, POTS, or some other comparable autonomic dysfunction." *A.F. v. Sec'y, HHS*, No. 19-446V, 2023 WL 251948, at *22 (Fed. Cl. Spec. Mstr. Jan. 18, 2023) (citing seven past cases in which special masters had dismissed such claims).

satisfied, the Chief Special Master determined certain reductions to the Fee Application were appropriate, and that $6,952.38 constituted a reasonable fees and costs award for Stratton in this case. Appx7-8.

Both parties sought review by the CFC. Appx9. Stratton challenged the Chief Special Master's reduction of her requested attorneys' fees.[10] Appx12. The Secretary challenged the Chief Special Master's reasonable basis determination. Appx11. The CFC (Lerner, J.) issued its Opinion on May 31, 2023. Appx9-18. As to reasonable basis, the CFC defined the applicable legal standard as follows:

> The burden of proof for establishing a reasonable basis for bringing the claim "is lower than the preponderant evidence standard" but is "more than a mere scintilla." *Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020). To establish a reasonable basis, petitioners must present objective evidence. *Cottingham*, 971 F.3d at 1344–45.

Appx12. The CFC went on to note that medical records "can suffice to establish reasonable basis," and held that because Stratton had submitted records "documenting that she reported symptoms following the vaccine and was subsequently diagnosed with POTS," there was sufficient evidence upon which to

---

[10] Stratton also moved for the Chief Special Master's disqualification based on his alleged bias against petitioners in cases involving Gardasil. Appx23 (ECF No. 47). The CFC denied the motion for disqualification as moot, given that the Chief Special Master had already adjudicated Stratton's claim, but noted that, had the court reached the issue, it would not have found Stratton's allegations of bias to have sufficient merit to warrant disqualification. Appx15-17.

affirm the Chief Special Master's reasonable basis finding. Appx12. The CFC then turned to Stratton's arguments and upheld some, but not all, of the Chief Special Master's reductions of Stratton's requested fees and costs. Appx13-14. The CFC determined that $8,876.86 constituted a reasonable amount to award Stratton for her attorneys' fees and costs. Appx18. Judgment entered the same day. Appx1.

This appeal ensued.

## V. SUMMARY OF THE ARGUMENT

While this Court has granted broad discretion to the special masters when making their reasonable basis determinations, that cannot include the discretion to perform no analysis whatsoever of the record evidence. Here, the Chief Special Master failed to provide any reasoned explanation for his reasonable basis determination, which was error. Then, the CFC compounded the error by also applying the wrong reasonable basis standard on review. Accordingly, the Court should vacate the decisions below and, because there is no objective evidence in the record that the Gardasil vaccine in fact caused Stratton's alleged injuries, find that Stratton is not eligible for an award of fees and costs in this case.

## VI. STANDARD OF REVIEW

In Vaccine Act cases, the Court reviews "a ruling by the [CFC] *de novo,* applying the same standard that [the CFC] applies in reviewing the decision of the special master." *Moberly v. Sec'y, HHS*, 592 F.3d 1315, 1321 (Fed. Cir. 2010) (citing *Lampe v. Sec'y, HHS*, 219 F.3d 1357, 1360 (Fed. Cir. 2000). Thus, as the Act provides, the Court may set aside the special master's findings of fact or conclusions of law if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa-12(e)(2)(B). Findings of fact receive deferential review under an "arbitrary and capricious" standard; legal conclusions are reviewed *de novo* under the "not in accordance with law" standard; and discretionary rulings are reviewed for "abuse of discretion." *Munn v. Sec'y, HHS*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

## VII. ARGUMENT

Section 15(e) of the Vaccine Act does not guarantee an award of attorneys' fees and costs to every claimant who files a petition for compensation. 42 U.S.C. § 300aa-15(e)(1). Rather, if a petitioner is denied compensation for the claimed injury or death, "the special master or court *may* award an amount of compensation to cover petitioner's reasonable attorneys' fees and costs," provided that the petitioner brought her claim in good faith and with a reasonable basis. *Id.* (emphasis added); *see also James-Cornelius v. Sec'y, HHS*, 984 F.3d 1374, 1379

(Fed. Cir. 2021) (holding that "a special master retains discretion to grant or deny attorneys' fees" in unsuccessful cases even if the reasonable basis and good faith requirements are satisfied, citing 42 U.S.C. § 300aa-15(e)(1) and *Cloer v. Sec'y, HHS*, 675 F.3d 1358, 1362 (Fed. Cir. 2012)). If the good faith and reasonable basis criteria are *not* satisfied, the special master lacks authority to award even a discretionary fees and costs award.[11] 42 U.S.C. § 300aa-15(e)(1).

This Court has repeatedly held that "a reasonable basis can only be established with objective evidence." *Cottingham v. Sec'y, HHS*, 971 F.3d 1337, 1344 (Fed. Cir. 2020); *see also James-Cornelius*, 984 F.3d at 1379; *Simmons*, 875

[11] This Court has recognized that "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for an award of attorneys' fees and costs. *Simmons v. Sec'y, HHS*, 875 F.3d 632, 635 (Fed. Cir. 2017). Whether there is a "reasonable basis" for the claim is an "objective inquiry" based on the evidence. *Id.* at 636. In contrast, "good faith" is a subjective standard. *Id.* at 635. There is little case law addressing what constitutes "good faith" because the Secretary has rarely challenged petitioners' good faith in bringing a petition. However, this Court has indicated that an attorney's due diligence in investigating a claim prior to filing may be relevant to the good faith analysis. *See Simmons,* 875 F.3d at 636 (holding that, in cases that are filed without a complete investigation and all of the evidence necessary to support the claim, "an impending statute of limitations deadline *may relate to whether 'the petition was brought in good faith' by counsel*, [but] the deadline does not provide a reasonable basis for the merits of the petitioner's claim" (emphasis added)). The Secretary therefore disagrees with the Chief Special Master's suggestion in both *Atjian* and this case that the *only* factor that is relevant to the "good faith" analysis is whether a petitioner holds an "honest belief" that he or she was injured by a vaccine. Appx5. Nevertheless, the Secretary is not challenging the Chief Special Master's finding of good faith in this case.

F.3d at 635-36. This Court has also made clear that subjective considerations, such as a petitioner's counsel's conduct or a looming statute of limitations, play no role in the reasonable basis analysis. *Cottingham*, 971 F.3d at 1344-45; *Simmons*, 875 F.3d at 636.

To establish reasonable basis, a petitioner must produce objective evidence to address each of the prima facie elements of the petitioner's claim, including an "affidavit, and supporting documentation, demonstrating that" the petitioner:

> (1) received a vaccine listed on the Vaccine Injury Table;
>
> (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
>
> (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
>
> (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
>
> (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-46 (citing 42 U.S.C. § 300aa-11(c)(1)). Regarding the quantum of evidence needed to meet the standard, "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a

special master to find reasonable basis."[12] *Id*. at 1346; *James-Cornelius*, 984 F.3d at 1379.

### A. The Chief Special Master and the CFC Both Applied an Incorrect Reasonable Basis Standard.

In his Decision, the Chief Special Master defined the reasonable basis standard simply as "a notably easy-to-satisfy evidentiary standard," citing this Court's opinion in *Cottingham*. Appx5. However, the Chief Special Master's formulation of the standard does not comport with the precedent he cites. While the standard articulated by this Court in *Cottingham* (and later reaffirmed in *James-Cornelius*) is easier-to-meet than the higher preponderance standard, a petitioner is still required to produce "more than a mere scintilla but less than a

---

[12] In one her opinions following the Court's remand in *Cottingham*, Senior CFC Judge Williams noted that the Fourth Circuit has characterized "more than a scintilla" as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Cottingham v. Sec'y, HHS*, 154 Fed. Cl. 790, 795 (2021) (citing *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 n.3 (4th Cir. 2021)). Other courts have defined "substantial evidence" the same way this Court has framed the Vaccine Act's reasonable basis standard – i.e., more than scintilla but less than a preponderance. *See, e.g.*, *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) ("Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance."); *Buford v. UNUM Life Ins. Co. of Am.*, 290 F.Supp.2d 92, 100 (D.D.C. 2003) (holding that that "[s]ubstantial evidence means 'more than a scintilla but less than a preponderance,'" citing *Leonard v. Southwestern Bell Corp. Disability Income Plan,* 341 F.3d 696, 701 (8th Cir. 2003)). Thus, the Court's formulation of the reasonable standard could be equated with the "substantial evidence" standard.

preponderance of proof" – i.e., evidence beyond speculation that would support a reasonable inference or conclusion by the fact-finder – to satisfy the reasonable basis requirement.

Here, the Chief Special Master effectively granted Stratton an unrebuttable presumption that her claim was supported by a reasonable basis, since he undertook *no* analysis of the evidence to determine whether Stratton had presented "more than a mere scintilla" of evidence pertaining to each element of her prima facie case. While case law supports granting a (rebuttable) presumption to a petitioner on the issue of good faith, *see, e.g.*, *Crowding v. Sec'y, HHS*, No. 16-876V, 2019 WL 1332797, at *9 (Fed. Cl. Spec. Mstr. Feb. 26, 2019) (holding that a "special master is justified in presuming good faith 'in the absence of direct evidence of bad faith'," citing *Grice v. Sec'y, HHS*, 36 Fed. Cl. 114, 121 (1996)), the case law is clear that no such presumption is available on the question of reasonable basis. *Cottingham*, 971 F.3d at 1345-46 (listing the various categories of evidence a petitioner must produce). Rather, the "burden is on the petitioner to affirmatively demonstrate a reasonable basis." *McKellar v. Sec'y, HHS*, 101 Fed. Cl. 297, 305 (2011). *See also Cottingham*, 971 F.3d at 1344 ("a reasonable basis can only be established with objective evidence").

The Chief Special Master may have believed he could simply presume that Stratton established a reasonable basis for her claim because the Act required her

to come through the Vaccine Program before filing a civil action against Merck directly. But the provision in the Act that requires a petitioner to come through the Program before filing a civil action, 42 U.S.C. § 300aa- 11(a)(2)(A), is entirely separate from the fee-shifting provision in Section 15(e). A petitioner, like Stratton here, who comes through the Program for the sole purpose of pursuing a civil action is not *automatically* guaranteed an award of fees and costs upon exiting the Program. Rather, under the express language of Section 15(e), each and every petitioner must still satisfy the good faith and reasonable basis requirements in their particular case to be eligible for even a discretionary award of fees and costs. Therefore, the Chief Special Master's failure to perform *any* analysis of the evidence to determine whether it satisfied the reasonable basis standard, as articulated by this Court, constituted legal error.[13] While the special masters retain

[13] Further, the Chief Special Master's intention – first stated in *Atjian* and reiterated in the instant Decision – to simply assume reasonable basis and award fees in all of Mr. Downing's Merck MDL cases filed prior to October 18, 2022, is an abuse of discretion. There are presently more than 160 fee applications pending before the Chief Special Master in cases where the petitioners withdrew their Vaccine Act petitions to join the Merck MDL (approximately 136 of which were filed prior to the date of the *Atjian* decision), with additional applications continuing to be filed. Thus, while the amount of fees and costs at issue in this case may seem insignificant, the cumulative amount at issue in all of the Merck MDL cases is not. Further, if the Chief Special Master's approach (i.e., simply presuming reasonable basis) is upheld, that would have implications for cases beyond just the Merck MDL cases. The affects of this appeal could therefore be far-reaching.

significant discretion when it comes to evaluating reasonable basis, they do not retain discretion to perform no evaluation at all.

The error in the Chief Special Master's Decision in this case is further amplified by the fact that he denied fees and costs to Mr. Downing in two other Merck MDL cases, on the ground that the petitioners in those cases failed to submit any evidence that they received the alleged vaccines. *Fetters v. Sec'y, HHS*, No. 21-928V, 2023 WL 2337471 (Fed. Cl. Spec. Mstr. Feb. 9, 2023), *aff'd*, 166 Fed. Cl. 189 (2023); *Levy v. Sec'y, HHS*, No. 20-1791V, 2023 WL 2339634 (Fed. Cl. Spec. Mstr. Mar. 3, 2023), *aff'd*, No. 20-1791V, 2023 WL 6143219 (Fed. Cl. June 26, 2023). While it was entirely appropriate for the Chief Special Master to find that those claims lacked a reasonable basis for the reasons he gave, it is arbitrary – and thus legal error – for him to conduct a reasonable basis analysis in some cases, but not others. *See, e.g.*, *Marion v. Sec'y, HHS*, No. 19-0495V, 2022 WL 2223145 (Fed. Cl. Spec. Mstr. May 9, 2022) (the Chief Special Master reviewing the record evidence and concluding that the petitioner failed to establish a reasonable basis for his claim). Likewise, it is arbitrary to elevate the importance of one prima facie element (e.g., that the petitioner received a vaccine covered by the Act) over another (e.g., that the vaccine caused the injury alleged) for purposes of a reasonable basis analysis. A case that lacks objective evidence that the

vaccine caused the alleged injury is just as baseless as a case that lacks objective evidence that a vaccination was ever administered.

The CFC's reasonable basis analysis was similarly flawed. As noted above, in framing the reasonable basis standard, this Court has held that a petitioner *must* produce "more than a mere scintilla" of evidence addressing *each of the elements of a prima facie case*, as set out in Section 11(c)(1) of the Act. *Cottingham*, 971 F.3d at 1345-46 (citing 42 U.S.C. § 300aa-11(c)(1)). That includes the third element – causation – which, in an off-Table case like this one, incorporates the causation-in-fact test set out by the Court in *Althen v. Sec'y, HHS*, 418 F.3d 1274 (Fed. Cir. 2005).[14] *See Sheller v. Sec'y, HHS*, 164 Fed. Cl. 398, 403 (2023) (reasoning that because "both the merits and the fee application incorporate a causation requirement, and [] *Althen* supplies the content of the causation standard for the merits, it makes sense to apply the same standard to fees," and noting that

---

[14] Under the Act, there are two methods by which a petitioner may demonstrate eligibility for an award. A petitioner may either prove that she suffered an injury listed in the Vaccine Injury Table, 42 C.F.R. § 100.3, within the requisite time-period (a "Table injury"), in which case causation is presumed, or prove with affirmative evidence that her medical condition was caused-in-fact by a vaccination. 42 U.S.C. § 300aa-11(c)(1)(C). In a causation-in-fact case, the petitioner must show by a preponderance of the evidence that the vaccination brought about her injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between the vaccination and injury. *Althen*, 418 F.3d at 1278.

"it would be peculiar if any element of *Althen* were necessary for the merits but not for a fee application"), *appeal docketed*, No. 23-1746 (Fed. Cir. Apr. 12, 2023); *Cottingham v. Sec'y, HHS*, 159 Fed. Cl. 328, 334 (2022) (holding that the special master did not err by using *Althen* as the framework for analyzing reasonable basis because, "as may be inferred from the Federal Circuit's opinion in this case, reasonable basis and entitlement to compensation differ only in the level of proof required, not in their elements"), *appeal docketed*, No. 22-1737 (Fed. Cir. Apr. 28, 2022); *Goodgame v. Sec'y, HHS*, 157 Fed. Cl. 62, 68 (2021) (holding that "a petitioner who has not submitted objective evidence that is substantiated by medical records or medical opinion – such that the Vaccine Act would permit a special master to 'find that on the record as a whole' that petitioner has established all five matters [required by Section 11(c)(1) of the Act] – has not submitted evidence sufficient to establish a reasonable basis for his or her claim").

Here, in articulating the applicable standard from *Cottingham*, the CFC merely stated that "petitioners must present objective evidence." Appx12. The CFC failed also to include the requirement that a petitioner must produce objective evidence addressing each of the prima facie elements of a claim, *including causation*. Appx11-12. As a result of that fundamental legal error, the CFC found reasonable basis here solely because Stratton experienced symptoms following her vaccination and was subsequently diagnosed with her alleged vaccine-related

injury.[15] Appx11-12. Critically, the CFC failed to identify any symptoms supposedly caused by the vaccine, or any objective evidence that the Gardasil vaccine actually caused Stratton's complaints or alleged injury. Having merely assumed those indispensable elements of Stratton's claim, the CFC also erred by failing to explain how the record here shows "more than a mere scintilla" of evidence of causation, which *Cottingham* requires. Appx11-12. For example, the CFC completely ignored the Secretary's arguments regarding the merits of Stratton's causation claim, which comprised several pages of the Secretary's brief (and which are set forth below in Section VII.B), but which were not discussed *at all* in the Opinion. Appx9-18. The CFC's Opinion is, therefore, in conflict with this Court's opinion in *Cottingham*, and at odds with the logical approach adopted by other CFC judges in *Sheller*, *Cottingham*, and *Goodgame, supra*.

For all of these reasons, the Court should hold that the Chief Special Master and CFC misapplied the law.

---

[15] As noted below, the records do not establish that Stratton either experienced adverse symptoms following the vaccination or that she was actually diagnosed with her alleged injury, POTS. Regardless, while evidence of vaccination followed by diagnosis of an injury might be sufficient to establish a reasonable basis for a claim involving a Table injury – for which a legal presumption of causation may be available – in off-Table cases like this one, where no such presumption is available and a petitioner instead must affirmatively prove causation-in-fact, some independent, objective evidence that the vaccine actually caused the injury is necessary to establish a reasonable basis for the claim.

### B. The Objective Record Evidence Does Not Establish A Reasonable Basis For Stratton's Claim.

Had the Chief Special Master and CFC correctly applied the law, they should have been required to conclude that Stratton's claim of a vaccine-injury is unsubstantiated by any objective record evidence. In the proceedings below, Stratton's contention that her claim had a reasonable basis relied on complaints in the record of headaches and dizziness (citing Appx58, an encounter on July 14, 2019), nausea (citing Appx54, also from the July 14, 2019 encounter), and abdominal pain (citing Appx60, an encounter on July 23, 2019), which she argued are all complaints "reflected in the Gardasil product insert." *See* Appx186. However, the records Stratton relies on to support this contention are from July 2019, twenty months after the vaccination. The Gardasil product insert provides no support for a causal connection between vaccination and the onset of headaches, dizziness, and/or abdominal pain many months later. *See, e.g., Cottingham v. HHS*, No. 15-1291V, 2021 WL 6881248, at *29-33 (Fed. Cl. Spec. Mtr. Sept. 27, 2021) (detailed discussion of the Gardasil product insert), *aff'd*, 159 Fed. Cl. 328 (2022), *appeal docketed*, No. 22-1737 (Fed. Cir. Apr. 28, 2022); *see also* Appx96-120 (Gardasil product insert).

Moreover, Stratton had a well-documented history of dizziness and syncope for more than two years prior to vaccination, and she was seen for both nausea and abdominal pain in the months before receiving the vaccination. Appx31-34;

Appx121-124; Appx125-129; Appx132-133. These complaints do not appear in any of the records generated in the days, weeks, and months after her November 6, 2017 HPV vaccination.[16] *See* Appx68-94. Nor is there any indication that Stratton had an adverse reaction to the vaccine; over the eight months that followed, her medical contacts were for routine complaints including upper respiratory infections, urinary tract infections, rash, a migraine, and blood in her stool, none of which appear as complaints on the Gardasil insert. Appx38-39; Appx68-94; Appx96-120 (Gardasil product insert). Finally, while Stratton alleges POTS and autonomic dysfunction as her injuries, the submitted records do not establish that she has ever been diagnosed with either condition. *See, e.g.*, Appx54, Appx61 (records reflecting that Stratton told her treating physicians that she had been diagnosed with POTS by some other physician, but no records from any physician who actually diagnosed her with POTS or autonomic dysfunction have been filed).

Stratton also claimed that her "medical chart supports the causal connection between vaccination and injury claimed." Appx186. The two records she cited to support this contention are also from 2019 encounters, and neither are statements from a treating doctor attributing – or even speculating – that the HPV vaccine

---

[16] A reference to transient abdominal pain was made at an urgent care encounter on November 30, 2017, at which Stratton was diagnosed with a urinary tract infection. The pain was attributed to petitioner's menstrual cycle. *See* Appx79-81.

caused or contributed to Stratton's problems. Rather, they are vague, unsupported remarks made by Stratton. The first, at a January 15, 2019 annual examination with PA Hajzus, was a report from Stratton that "after her first HPV vaccine, she had a reaction and [does not] want to complete the series." Appx35. No further information is provided describing the alleged "reaction," when it occurred, or how long it lasted.[17] The second citation is a September 18, 2019 notation that Stratton "[t]hinks [her problems] may be related to her Gardasil vaccine, which she received one dose of, contracted mono, and then started having [cardiovascular] and [gastrointestinal] symptoms." Appx61. This statement is unsupported by the record, but even if credited, the timeline places onset *more than eight months* after the vaccination. *See* Appx92 (showing mononucleosis occurred in June 2018). Stratton's medical records therefore provide no objective evidence of causation.

Stratton's affidavit, filed after proceedings on the merits had concluded and thus solely to support the Fee Application, also does not create a reasonable basis

---

[17] The duration of the alleged "reaction" is significant because the Vaccine Act requires a petitioner to prove, *inter alia*, that an alleged vaccine injury persisted for at least six months for it to be compensable. *See* 42 U.S.C. § 300aa-11(c)(1)(D); *Contreras v. Sec'y, HHS*, No. 19-491V, 2022 WL 1580602, at *6 (Fed. Cl. Mar. 10, 2022) (CFC Judge Roumel observing that the "[p]etitioner's claim cannot have a reasonable basis unless objective evidence supports his contention that the claimed injury lasted for more than six months"); *see also Cottingham*, 971 F.3d at 1345-46 (identifying the Vaccine Act's severity requirement as a prima facie element for which a petitioner must produce objective evidence in order to establish reasonable basis).

for her claim. Stratton makes no mention of her significant pre-vaccination medical history. Appx139-142. She alleges events following the vaccination, including chronic headaches, severe fatigue, and dizziness, *see* Appx139-142, but offers no citation or evidence to support these events having occurred in temporal proximity to the vaccination, nor does she attempt to reconcile these contentions with the contemporaneous records generated from her many medical visits. Stratton's affidavit is therefore patently insufficient, by itself, to establish a reasonable basis for her claim. *See* 42 U.S.C. § 300aa-13(a)(1) (the Act explicitly providing that a special master may not award compensation "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion").

Finally, the Chief Special Master himself has recently noted that the medical literature submitted by Stratton has been consistently discredited. *A.F.*, 2023 WL 251948, at *23 (noting that "unsuccessful petitioners have commonly cited to many of the same items of literature offered herein, like Blitshteyn I and II, Brinth, and Kinoshita. But the articles have been criticized as unreliable or unpersuasive."); *see also Cottingham*, 2021 WL 6881248 at *39-43 (discussion of medical articles). That Stratton relied on the Blitshteyn article (Appx168-172) as evidence supporting a reasonable basis for her claim is particularly notable. Dr. Blitshteyn has appeared as an expert for petitioners in a number of Vaccine Program cases alleging POTS and/or autonomic dysfunction due to Gardasil, and

her causal opinion in those cases has never been credited. *See, e.g.*, *Orm v. Sec'y, HHS*, No. 14-257V, 2022 WL 1210632 (Fed. Cl. Spec. Mstr. Mar. 29, 2022); *Humphries v. Sec'y, HHS*, No. 17-288V, 2021 WL 1733512 (Fed. Cl. Spec. Mstr. Apr. 9, 2021); *Turkupolis v. Sec'y, HHS*, No. 10-351V, 2014 WL 2872215 (Fed. Cl. Spec. Mstr. May 30, 2014). Moreover, Dr. Blitshteyn testified in another Vaccine Act case that twelve weeks between vaccination and onset of symptoms is the maximum amount of time she would consider to be medically acceptable to infer vaccine-causation. *C.F. v. Sec'y, HHS*, No. 15-731V, 2023 WL 2198809 at *19 (Fed. Cl. Spec. Mstr. Jan. 20, 2023). As set forth above, the interval between vaccination and onset in this case was likely *eight months at best*, and thus, well beyond the timeframe even one of petitioners' frequent experts would endorse.

In sum, Stratton has not met her burden under the reasonable basis standard. None of her treating physicians opined that the Gardasil vaccine caused her alleged injuries; indeed, it is unclear if she was ever actually diagnosed with her alleged injuries (POTS and autonomic dysfunction). Stratton has likewise failed to provide *any* objective evidence:

- of a reliable medical theory causally linking the Gardasil vaccine to her alleged injuries in general;
- that the Gardasil vaccine was the reason for her alleged injuries specifically in this case; or,

- that there was a medically appropriate temporal relationship between her vaccination and the onset of her alleged injuries to support the finding of a causal association.

Stratton simply has not provided "more than a mere scintilla of evidence" that the Gardasil vaccine caused her *any* injury, which is an essential element of her claim under Section 11(c)(1) of the Act.

The Court should therefore set aside the findings of the Chief Special Master and the CFC, and find that Stratton has not established a reasonable basis for her claim. *See* 42 U.S.C. § 300aa-12(e)(2)(B) (authorizing the CFC to set aside a special master's findings of fact and conclusions of law if found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and to issue its own findings of fact or conclusions of law); *Moberly*, 592 F.3d at 1321 (noting that this Court applies "the same standard that [the CFC] applies in reviewing the decision of the special master").

## VIII. CONCLUSION

This Court has repeatedly held that a petitioner must submit more than a mere scintilla of objective evidence that addresses each of the necessary elements of her claim in order to establish that the claim has a reasonable basis. The Chief Special Master and the CFC did not correctly apply that standard, because neither analyzed whether Stratton had provided any objective evidence on the issue of

causation, which is an essential – *if not the most critical* – element of her claim. When the correct standard is applied, it is clear that the record evidence does not meet it. Thus, an award of fees and costs was not authorized under the Act, and the Secretary requests that the Court vacate the decisions below and deny Strattons' request for an award of attorneys' fees and costs in this case.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

C. SALVATORE D'ALESSIO
Director
Torts Branch, Civil Division

HEATHER L. PEARLMAN
Deputy Director
Torts Branch, Civil Division

s/Voris E. Johnson, Jr.
VORIS E JOHNSON, JR.
Senior Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, D.C. 20044-0146
Tel: (202) 616-4133
Email: voris.johnson@usdoj.gov

Date: October 2, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify, based on the line count of the word-processing system used to prepare this brief, that the brief contains 8,884 words and 956 lines of text, and is, therefore, in conformity with Fed. Cir. R. 32(a).

/s/ Voris E. Johnson, Jr.
VORIS E. JOHNSON, JR.
Attorney for Respondent-Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October, 2023, the foregoing **BRIEF OF RESPONDENT-APPELLANT** was served electronically upon:

Andrew D. Downing
DOWNING, ALLISON & JORGENSON
3030 N. Central Avenue, Suite 507
Phoenix, AZ 85012
adowning@daj-law.com

/s/ Voris E. Johnson, Jr.
VORIS E. JOHNSON, JR.
Attorney for Respondent-Appellee

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

## ADDENDUM

Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appx1

Special Master Decision on Attorney's Fees and Costs . . . . . . . . . . . . . Appx2

CFC Opinion and Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appx9

# In the United States Court of Federal Claims

**No. 20-1515 V**
**Filed: May 31, 2023**

**ABIGAIL STRATTON**
**Petitioner**

**v.**

**SECRETARY OF THE DEPT. OF HEALTH AND HUMAN SERVICES**
**Respondent**

**JUDGMENT**

Pursuant to the court's Opinion and Order, filed May 31, 2023, granting-in-part and denying-in-part petitioner's motion for review and denying respondent's motion for review of the special master's decision on attorneys' fees and costs, filed February 9, 2023,

IT IS ORDERED AND ADJUDGED this date, pursuant to Appendix B, Vaccine Rule 30, that petitioner is awarded attorneys' fees and costs, available under 42 U.S.C. § 300aa-15(e), in the lump sum amount of $8,876.86, in the form of a check made payable to petitioner and petitioner's attorney, Andrew Downing.

Lisa L. Reyes
Clerk of Court

By: s/ Debra L. Samler

Deputy Clerk

NOTE: As to election, 90 days from this or the issuance of the appellate court's mandate, see Appendix B, Rule 33.

Represented petitioners' motions for attorneys' fees and costs shall be filed within 180 days of judgment, see Vaccine Rule 13. Pro se petitioners may seek litigation costs within 180 days of judgment.

As to petition for review, 60 days from this date, see Appendix B, Rule 32. Petition for review and filing fee of $500.00 should be mailed to the following address: Clerk, U.S. Court of Appeals for the Federal Circuit, 717 Madison Place, NW, Washington, DC 20439.

# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-1515V**
UNPUBLISHED

| | |
|---|---|
| ABIGAIL STRATTON,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: February 9, 2023<br><br>Pre-Assignment Review (PAR); Attorney's Fees and Costs; Reasonable Basis; Good Faith; Human Papillomavirus (HPV) Vaccine; POTS; autonomic dysfunction |

*Andrew Donald Downing, Downing, Allison & Jorgenson, Phoenix, AZ, for Petitioner.*

*Heather Lynn Pearlman, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On November 2, 2020, Abigail Stratton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa—10 through 34[2] (the "Vaccine Act"). Petitioner alleged that the human papillomavirus ("HPV") vaccine she received on November 6, 2017, caused her to develop postural orthostatic tachycardia syndrome ("POTS") and autonomic dysfunction. ECF No. 1 ¶ 9. Petitioner withdrew the case just over eight months later, however – well before the claim's substantive basis could be evaluated, and for the express purpose of litigating the claim in a different manner and alternative forum.

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "Section" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Petitioner now seeks an award of fees and costs, but Respondent contests the propriety of such an award. For the reasons discussed below, I find there was sufficient reasonable basis and good faith for Petitioner's claim, and that she is otherwise entitled to a fees award, despite the circumstances of dismissal, although a reduction in the amount of fees awarded is appropriate.

## I. Background

As noted, Petitioner timely filed a Notice of Intent to Withdraw from the Vaccine Program, in accordance with the terms of the Act, on July 6, 2021. ECF No. 19. This case (and numerous others like it) filed by the same counsel alleges an injury relating to the administration of an HPV vaccine, but has been withdrawn in accordance with the terms of the Vaccine Act and Rules, solely for the purpose of combining it with like cases against the vaccine manufacturer pending in other fora. (A more thorough explanation of the substantive background for early termination is set forth in *Atjian v. Sec'y of Health & Hum. Servs.*, No. 21-1413V, 2022 WL 17587757 (Fed. Cl. Spec. Mstr. Oct. 18, 2022), and is incorporated by reference herein). I accordingly issued an Order Concluding Proceedings pursuant to Vaccine Rule 10(d) on July 8, 2021. ECF No. 20.

On July 12, 2021, Petitioner filed a motion for attorney's fees and costs seeking $10,789.96. Motion for Final Attorney's fees and Costs ("Mot."), ECF No. 22. On July 23, 2021, Respondent filed an opposition ("Opp."), arguing that Petitioner had failed to establish a reasonable basis and good faith for his claim. ECF No. 23. On July 27, 2021, Petitioner replied to Respondent's arguments ("Reply"). ECF No. 24. On September 2, 2021, Petitioner filed a Supplemental Motion for Attorney Fees and Costs ("Supp. Mot.") for additional expenses incurred preparing the reply to Respondent's opposition. ECF No. 27. In total, Petitioner is seeking $12,175.96 in attorney's fees and costs.[3]

## II. Fees and Costs For Unsuccessful Claims

The Vaccine Act permits fees in *some* unsuccessful cases – a classification that includes cases that are terminated without final resolution, as here. This is in keeping with the Program's goal of ensuring that petitioners have adequate assistance from counsel when pursuing their claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorney's fees and costs may be awarded even when the petition was untimely filed). There is a threshold requirement for fees under such circumstances,

---

[3] On October 5, 2022, Petitioner filed a motion to hold a status conference to discuss the delay in ruling on the pending fees motion. ECF No. 31. But because this Decision addresses the underlying substantive issue, the motion to hold a status conference is **DENIED AS MOOT**.

however – petitioners must demonstrate "that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Fees can still be adjusted, or denied entirely, however, even where reasonable basis is established.

As the Federal Circuit has explained, the relevant analysis involves two distinct inquiries: (1) a subjective one assessing whether the petition was brought in good faith and (2) an objective one ascertaining whether reasonable basis for the petition existed. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Good faith is a subjective test, satisfied through subjective evidence"); *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation."); *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)) (addressing the objective requirements of reasonable basis).

Good faith is a subjective standard. *Simmons*, 875 F.3d at 635. Simply put, good faith is "whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007. As a result, a petitioner's mere belief in the legitimacy of a vaccine claim can supply the required good faith – no matter how factually misplaced that belief may be. *See Atjian*, 2022 WL 17587757, at *5-6 (extensive good faith discussion).

"Reasonable basis … is an objective test, satisfied through objective evidence." *Cottingham,* 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). As I have noted in prior cases, reasonable basis is an extremely lenient standard. *Hughes v. Sec'y of Health & Hum. Servs.*, No. 16-930V, 2021 WL 6621169, at *3 (Fed. Cl. Spec. Mstr. Dec. 29, 2021) mot. for review denied, 154 Fed. Cl. 640 (2021). Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham*, 971 F.3d at 1345-46.

### III. Fees Are Appropriate for This Matter

Although Respondent maintains that the threshold bases for fees in an "unsuccessful" case are not met here, I find (consistent generally with my determination in *Atjian*, which was not appealed by either party) they are. First, the claim had sufficient good faith, even if counsel expected to withdraw it well before its adjudication. Petitioner proposed a definition good faith as an "honest belief that [he] suffered an injury due to the vaccination at issue." Mot. at 2. Respondent argues that for a case to be brought in good faith, it must be brought "with the intent to litigate the merits of the claim" in the Program. Opp. at 7. But both parties presented identical legal arguments in support of their respective definitions to those presented in *Atjian* (2022 WL 17587757, at *4), and I found good faith satisfied simply because Petitioner does believe the vaccine was injurious (even if a review of reasoned decisions in the Program reveals the factual unsoundness of that belief).

Regarding reasonable basis, Respondent argues that: 1) the medical records do not sufficiently support Petitioner's alleged symptoms (Opp. at 9); 2) Petitioner's treating doctors did not opine that Petitioner's HPV vaccine caused or contributed to Petitioner's problems (*Id.* at 9-10); and 3) Petitioner's affidavit should be afforded no weight due to its omissions and lack of detail (*Id.* at 10).

Respondent's skepticism of the claim's likelihood of success is reasonable. But I emphasize again that reasonable basis is a notably easy-to-satisfy evidentiary standard. *Cottingham*, 971 F.3d at 1345-46. It is the "feasibility of the claim" that governs, and not whether the claim was likely to prevail. *Turner*, 2007 WL 4410030, at *6. While the issues raised by Respondent would more likely than not have prevented Petitioner from obtaining compensation, Petitioner has filed sufficient medical records to satisfy the exceedingly low evidentiary standard at play here.

Of course, and as noted in *Atjian* (2022 WL 17587757, at *10), special masters always have the discretion to deny or reduce fees *even* when good faith and reasonable basis have been adequately established. My experience repeatedly deciding HPV vaccine-based claims has led me to doubt their overall validity – despite good faith views of the vaccine's causality (bulwarked by medical record evidence that the claimant at issue did experience some post-vaccination symptoms). *See,* e.g., *Hughes v. Sec'y of Health & Hum. Servs.*, No. 16-930V, 2021 WL 839092, at *31 (Fed. Cl. Spec. Mstr. Jan. 4, 2021), *mot. for review denied*, 154 Fed. Cl. 640 (2021); *E.S. v. Sec'y of Health & Hum. Servs.*, No. 17-480V, 2020 WL 9076620, at *40, 43 (Fed. Cl. Spec. Mstr. Nov. 13, 2020), *mot. for review denied*, 154 Fed. Cl. 149 (2021); *McKown v. Sec'y of Health & Hum. Servs.*, No. 15-1451V, 2019 WL 4072113, at *44–45 (Fed. Cl. Spec. Mstr. July 15, 2019). Present counsel thus runs the risk that if he continues to pass through the Program in

present fashion in order to reach a preferred forum, I am likely to deny fees *even* if the withdrawal itself meets the Act's procedural requirements. But I will only invoke this admonition in cases filed after the *Atjian* fees decision issued (i.e., cases filed after October 18, 2022).

## III. Fees and Costs Calculation

### A. Legal Standard

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include hours in their fee requests that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011). Rather, when assessing attorney's fees and costs, the goal is to achieve a "rough justice." *Fox v. Vice*, 563 U.S. 826, 838 (2011),

### B. Attorney's fees

#### 1. Hourly Rates

Petitioner requests compensation for attorney Andrew D. Downing based on the following rates: $385 per hour for time billed in 2020-21. Mot., ex. A at 16. For attorney Courtney Van Cott, Petitioner seeks $275 per hour, and for paralegals Robert W. Cain and Danielle P. Avery, Petitioner seeks a rate of $135 per hour. *Id*. The requested rates for time billed in 2020-21 are reasonable and are consistent with what has previously been awarded for work these individuals have performed in other cases.[4] *Roach v. Sec'y of Health & Hum. Servs.*, No. 20-789V, 2022 WL 1008288, at *4 (Fed. Cl. Spec. Mstr. Mar. 10, 2022).

#### 2. Hours Billed

---

[4] The Attorney's Fee Schedules for 2020-22 are available at http://www.uscfc.uscourts.gov/node/2914.

Much of the time billed in this matter was reasonable, but the following time entry issues remain: (1) inappropriate billing for clerical tasks; (2) inappropriate billing for duplicative work; and (3) one-time billing for legal issues related to this and similar attorney's fees and costs motions and replies. Each of these issues were present in *Atjian*, 2022 WL 17587757, at *11-12, and also exist in the numerous other cases prosecuted by Petitioner's counsel that are similarly situated. Moreover, for the inappropriate billing for clerical tasks and duplicative work, Petitioner's counsel has been repeatedly admonished for these billing issues in many other unrelated cases. See *Finefrock v. Sec'y of Health & Hum. Servs.*, No. 20-42V, 2022 WL 3153258, at *2 (Fed. Cl. Spec. Mstr. July 20, 2022) (clerical tasks); *Dreyer v. Sec'y of Health & Hum. Servs.*, No. 18-764V, 2019 WL 6138132, at *3 (Fed. Cl. Spec. Mstr. Oct. 29, 2019) (duplicative billing). Lastly, as explained in *Atjian*, 2022 WL 17587757, at *12, I advised counsel that he would only be credited once for the time required to develop the standardized legal arguments in his numerous fees motions and replies. Going forward, counsel would only be awarded minimal attorney time for a final review of the fees motions and replies and preparation of the fees motions and replies should only be billed as paralegal time.

For all three billing issues, based on my prior experience with Petitioner's counsel, review of the billing records in this case, and review of the cases similarly situated to this one, I find a *thirty (30) percent* reduction in fees to be appropriate, resulting in a reduction of the total amount to be awarded of $3,299.10.

3. <u>Other General Fees Reduction Appropriate</u>

As discussed in *Atjian*, 2022 WL 17587757, at *12-13, Petitioner has submitted the minimum evidence required to satisfy the initial PAR review in the Vaccine Program. Although I have found that a fees award is appropriate herein, I also find, in the reasonable exercise of my discretion under the circumstances, that the overall *magnitude* of the award should be more modest than what has been requested.

Because of the above, a request for more than $12,000.00 for attorney's fees and costs is excessive in the context of a case that lasted less than nine months and was never intended to be litigated herein. As a result, I will rely on my authority to make reasonable percentage reductions in fees in appropriate cases. *Abbott v. Sec'y of Health & Hum. Servs.*, No. 10-485V, 2017 WL 2226614, at *7-8 (Fed. Cl. Spec. Mstr. Apr. 26, 2017) mot. for rev. denied, 135 Fed. Cl. 107, 111-12 (2017). After reducing the total amount of fees requested as noted above, I also impose a twenty-five (25) percent reduction in the sum to be awarded, a reduction of $1,924.48, resulting in a total fees

award of $5,773.43.[5] I will employ this same reduction to all comparable claims, unless the total fees requested do not exceed $5,000.00.

### C. Attorney's Costs

Petitioner requests $1,178.96 in overall costs. Mot. at 5; Mot., ex. A at 15. This amount is comprised of obtaining medical records, shipping fees, and the Court's filing fee. Mot., ex. A at 13-15. In his Motion, pursuant to General Order No. 9, counsel indicates that Petitioner incurred no out-of-pocket litigation costs. Mot. at 7. I have reviewed all the requested costs and find them to be reasonable, and award them in full.

## CONCLUSION

The Vaccine Act permits an award of reasonable attorney's fees and costs. Section 15(e). Accordingly, I hereby **GRANT IN PART** Petitioner's Motion and Supplemental Motion, and award a total of $6,952.38 (consisting of $5,773.42 in fees and $1,178.96 in costs) as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[5] **Calculation of fees reductions:**

| | |
|---|---|
| Initial & supplemental fees requested | $10,997.00 |
| 30% reduction for clerical tasks, duplicate billing, and hours for drafting fees filings | -$3,299.10 |
| 25% general reduction | -$1,924.48 |
| **Total fees award** | **$5,773.42** |

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.

# In the United States Court of Federal Claims

| | |
|---|---|
| ABIGAIL STRATTON,<br><br>*Petitioner,*<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>*Respondent.* | No. 20-1515<br>(Filed: May 31, 2023)[1] |

*Andrew Donald Downing*, Downing, Allison & Jorgenson, Phoenix, AZ, for Petitioner.

*Voris Edward Johnson*, United States Department of Justice, Washington, DC, for Respondent.

**OPINION AND ORDER**

Petitioner Abigail Stratton and Respondent Secretary of Health and Human Services ("HHS") each seek review of an attorneys' fee award under the National Childhood Vaccine Injury Act of 1986, as amended, 42 U.S.C. § 300aa-1 *et seq.* ("Vaccine Act"). Pet'r's Mot. for Review ("Pet'r's Mot. for Rev."), ECF No. 39; Resp't's Mot. for Review ("Resp't's Mot. for Rev."), ECF No. 37.

On November 2, 2020, Ms. Stratton filed a petition with the Office of Special Master ("OSM") alleging that she developed postural orthostatic tachycardic syndrome ("POTS") following administration of the human papillomavirus ("HPV") vaccine, known as Gardasil. Pet. at 1, ECF No. 1. On July 6, 2021, she withdrew her petition to instead file in federal district court. Notice of Intent, ECF No. 19. She now moves for attorneys' fees and costs. *Id.* at 7 n.5. Chief Special Master Corcoran awarded Ms. Stratton partial fees. Dec. on Atty's's Fees and Costs ("Dec."), ECF No. 34. He reduced the fee award twice: first by thirty percent due to billing issues and then by twenty-five percent for discretionary reasons. Both parties move to review the award.

The Chief Special Master acted within his authority to reduce the fee award by thirty percent but abused his discretion in further reducing it by twenty-five percent. Accordingly, Petitioner's Motion for Review is **GRANTED-IN-PART** and **DENIED-IN-PART**, while Respondent's Motion is **DENIED**.

[1] This opinion will be held for fourteen days during which the parties may propose to chambers any appropriate redactions. Rules of the United States Court of Federal Claims, App. B, Rule 18(b) ("Vaccine Rules").

Petitioner also moved to disqualify the Chief Special Master from matters involving the HPV vaccine. Pet'r's Mot. for Disqualification ("Pet'r's Mot. for Disq."), ECF No. 47. She argues that the Chief Special Master is biased against petitioners alleging injury from that vaccine. For the foregoing reasons, Petitioner's disqualification motion is **DENIED**.

## I. Background

### A. Factual Background

On November 6, 2017, Ms. Stratton received the Gardasil vaccine. Pet. at 2, ECF No. 38. Following receipt of the vaccine, Ms. Stratton sought medical treatment for several symptoms, including joint pain, fatigue, dizziness, and headache. *Id.* She was eventually diagnosed with POTS in 2019. *Id.* Ms. Stratton alleged the vaccination caused this injury. *Id.*

### B. Procedural History

On November 2, 2020, Petitioner filed a claim under the Vaccine Act. Pet. at 1. The case was assigned to Chief Special Master Corcoran. ECF No. 4. At the outset, Petitioner indicated she intended to pursue a cause of action against the manufacturer of the HPV vaccine, stating that she was "statutorily compelled to initiate this claim prior to pursuing a cause of action against Merck directly" in federal district court. *Id.*; *see* 42 U.S.C. § 300aa-11(2)(A). During the course of litigation, Petitioner submitted medical records. Medical Records, ECF No. 6. On July 6, 2021, Petitioner filed a Notice of Intent to Withdraw in order to pursue her claim in federal district court.

On July 12, 2021, Petitioner filed a Motion for Attorneys' Fees and Costs. Pet'r's Mot. for Att'ys' Fees and Costs, ECF No. 22. Following further briefing, Petitioner moved for additional fees. Pet'r's Suppl. Mot. for Final Att'ys' Fees and Costs ("Pet'r's Suppl. Mot.") at 1, ECF No. 27. In total, Petitioner requested $12,175.96 in attorneys' fees and costs. *Id.* The Chief Special Master issued a decision on this matter on February 9, 2023. Dec. at 1. He awarded Petitioner partial fees of $5,773.42 and full costs of $1,178.96, resulting in a total award of $6,952.38. *Id.* at 7. Both parties filed motions for review. *See* Pet'r's Mot. for Rev.; Resp't's Mot. for Rev.

While the motions were pending, Petitioner moved to disqualify the Chief Special Master. Pet'r's Mot. for Disq, ECF No. 47. The motion seeks the Chief Special Master's "recusal" from all cases alleging injury after a Gardasil vaccine. *Id.* at 1.

### C. HPV Vaccine Litigation

In order to pursue a cause of action against the vaccine manufacturer Merck, claimants must first exhaust their administrative remedies under the Vaccine Act. *See* 42 U.S.C. § 300aa-11(2)(A) (prohibiting civil actions for over $1,000 against vaccine manufacturers "unless a petition has been filed . . . for compensation under the Program for such injury"). In accord with this requirement, Ms. Stratton brought a petition before the Court of Federal Claims. Pet. at 1.

Petitioner's counsel represents numerous similarly situated petitioners with Gardasil claims under the Vaccine Act, only a sliver of "hundreds, possibly thousands" of individuals

seeking compensation for injuries allegedly caused by the HPV vaccine. Pet'r's Mot. for Disq. Ex. B, at 5, ECF No. 47-2. To ease the burden of the expected high volume of litigation, he contacted the Department of Justice ("DOJ") and the Court of Federal Claims on August 5, 2020. Pet'r's Mot. for Disq. Ex., B at 5. Counsel presented a proposal to "streamline the filing and opt out process for these cases, thereby alleviating the strain on the Court, the DOJ, HHS" as petitioners exhaust their administrative remedies. *Id.* In essence, he requested that similarly situated petitioners be released from the standard procedural requirements and instead be permitted to file a form petition and response so that a decision could be rapidly replicated. *Id.*

The OSM rejected this request on August 20, 2020. *Id.* at 4. It informed counsel that "[t]he Court does not endorse" filing petitions with the intent solely to later withdraw and join a pending class action. *Id.* Regarding attorneys' fees, OSM stated that "requests for fees and costs in these matters will be reviewed in light of the present circumstances." *Id.* The OSM noted that it did "not expect, for example, that cases filed simply to check off the 'Vaccine Program' box will require significant attorney time." *Id.*

On September 17, 2020, Petitioner's counsel told OSM that "[i]t does not appear any expedited process will be satisfactory" because "[i]t appears that both the Chief [Special Master] and the DOJ expect [him] to fully work up each individual case." Resp't's Resp. to Pet'r's Mot. to Disqualify ("Resp't's Resp. to Mot. to Disq.") Ex., at 1, ECF No. 50-1.

On March 20, 2023, Petitioner's counsel moved to disqualify the Chief Special Master. Pet'r's Mot. for Disq. The same day, he filed similar motions in two other cases pending in this court. Pet'r's Mot. for Disqualification, ECF No. 33, *Levy v. Sec'y of Health & Hum. Services*, No. 20-1791 (Fed. Cl. March 20, 2023) (Meyers, J.); Pet'r's Mot. for Disqualification, ECF No. 28, *Fetters v. Sec'y of Health & Hum. Servs.*, No. 21-928 (Fed. Cl. March 20, 2023) (Lettow, J.). On March 21, 2023, Petitioner's counsel filed motions to disqualify the Chief Special Master in over fifty other cases pending in OSM assigned to the Chief Special Master. Pet'r's Reply in Supp. of the Mot. for Disqualification ("Pet'r's Reply") Ex. A, at 1, ECF No. 51-1. The Chief Special Master stayed all cases in which such a motion was filed pending disposition of the motions in *Levy*, *Fetters*, and the present matter. *Id.* at 2.

## II. Standard of Review

The Vaccine Act permits a special master or court to award attorneys' fees, even when a petitioner is not otherwise awarded compensation. 42 U.S.C. § 300aa-15(e)(1). The Court of Federal Claims reviews a special master's award of attorneys' fees for abuse of discretion. *Hall v. Sec'y of Health & Hum. Servs.*, 640 F.3d 1351, 1356 (Fed. Cir. 2011). Fact findings are reviewed under the arbitrary and capricious standard. *Id.* at 154.

## III. Motions for Review of the Chief Special Master's Decision

### A. Respondent's Fee Award Objection

When a petition does not result in compensation, the special master may still award fees if he "determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1). Respondent does not challenge the good faith element, only the Chief Special Master's reasonable basis analysis.

Resp't's Mot. for Rev. at 1. The burden of proof for establishing a reasonable basis for bringing the claim "is lower than the preponderant evidence standard" but is "more than a mere scintilla." *Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020). To establish a reasonable basis, petitioners must present objective evidence. *Cottingham*, 971 F.3d at 1344–45. Because this is a factual question, the Court reviews the finding under the arbitrary and capricious standard. *Hall*, 640 F.3d at 1355.

Medical records can suffice to establish a reasonable basis. *See James-Cornelius ex rel. E.J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379–80 (Fed. Cir. 2021) (finding that petitioner's diagnosis of POTS and other symptoms following Gardasil vaccinations negated special master's conclusion that the petition lacked reasonable basis). Here, Ms. Stratton provided medical records documenting that she reported symptoms following the vaccine and was subsequently diagnosed with POTS. Pet'r's Ex. 3 at 2, ECF No. 6-3 (records from Roper St. Francis Physician Partners); Medical Records, Pet'r's Ex. 4 at 133, ECF No. 6-5 (records from MUSC Health). In his Decision, the Chief Special Master found that "Petitioner has filed sufficient medical records to satisfy the exceedingly low evidentiary standard" to establish a reasonable basis. Dec. at 4. He further noted that the medical records demonstrate "that the claimant at issue did experience some post-vaccination symptoms." *Id.* Those findings satisfy the Court's review under the arbitrary and capricious standard. Accordingly, Respondent's Motion is denied.

**B. Petitioner's Fee Amount Objection**

Special masters have wide discretion to determine the "amount of reasonable attorneys' fees." *Saxton ex. rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). They do not need to conduct a line-by-line analysis and may rely on percentage reductions of requested award amounts. *Raymo v. Sec'y of Health & Hum. Servs.*, 129 Fed. Cl. 691, 703 (2016). Adjustments by percentage are subject to heightened scrutiny and must be accompanied by "a 'concise but clear' explanation as to why the fee reduction is justified." *Id.* (citing *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 424 F.3d 1235, 1239 (Fed. Cir. 2005)). Courts and special masters have discretion to "make an upward or downward departure to the fee award based on other specific findings." *Avera*, 515 F.3d at 1348.

The Chief Special Master reduced the fee award twice: first by thirty percent for enumerated errors, then by twenty-five percent of an already reduced whole as a "general reduction." Dec. at 6–7. As explained further below, the initial reduction was appropriately accompanied by a "concise but clear explanation." However, the Chief Special Master abused his discretion when he then cut the fees by an additional twenty-five percent. This was in error because he failed to clearly explain the reduction, the creation of a new category for reduction, and a new two-step process for reductions.

**1. Thirty Percent Reduction**

The Chief Special Master did not abuse his discretion when he reduced the total fee by thirty percent. He explained that the reduction was due to: "(1) inappropriate billing for clerical tasks; (2) inappropriate billing for duplicative work; and (3) one-time billing for legal issues

related to this and similar attorney[s'] fees and costs motions and replies." Dec. at 6. This justification is sufficiently clear.

The Chief Special Master has authority to use his discretion to reduce fees for all three identified categories. *See Guerrero v. Sec'y of Health & Hum. Servs.*, 124 Fed. Cl. 153, 160 (2015) (upholding a reduction of fees "deemed clerical or administrative in nature"); *Hines ex rel. Sevier v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 756 (1991) (finding reduction of fees appropriate for clerical work); *Raymo*, 129 Fed. Cl. at 703 (affirming decision to reduce fees involving duplicative work); *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 205–06 (2009) (finding that special masters may rely on their experience in determining attorneys' fees because they are "familiar with the litigation").

Furthermore, the Chief Special Master relied on his "prior experience with Petitioner's counsel" in arriving at this conclusion. Dec. at 6. A special master may rely on prior experience in determining a reasonable award, including with specific counsel. *See Raymo*, 129 Fed. Cl. at 701; *Saxton*, 3 F.3d at 1520–21. The Chief Special Master noted that similar briefing from counsel included "standardized legal arguments in his numerous fees motions and replies." Dec. at 6. The Decision also states that Petitioner's attorney has been "repeatedly admonished" for billing issues in other cases before the Chief Special Master that included "inappropriate billing for clerical tasks and duplicative work." *Id.* Based in part on this experience, the Chief Special Master appropriately determined and clearly explained why a percentage reduction was warranted.

**2. Twenty-Five Percent Reduction**

The Chief Special Master further reduced the award by twenty-five percent. He did so because, in his view, "a request for more than $12,000 for attorney[s'] fees and costs is excessive in the context of a case that lasted less than nine months and was never intended to be litigated herein." Dec. at 6. His explanation ends there.

After determining a reasonable amount of fees, a special master has discretion to make an upward or downward departure. *See Avera*, 515 F.3d at 1348–49. However, he must still be able to provide a "concise but clear explanation" justifying the fee reduction. *Raymo*, 129 Fed. Cl. at 703. The Court finds that the Chief Special Master's justification for the additional twenty-five percent reduction does not meet this requirement and thus is an abuse of discretion.

First, the Chief Special Master fails to explain the general reduction. He relies solely on "his authority to make reasonable percentage reductions" and does not provide any details or references to the factual record to support cutting the award. Dec. at 6. For legal authority, he relies on *Abbott v. Sec'y of Health & Human Services*, No. 10-485V, 2017 WL 2226614, at *7–8 (Fed. Cl. Spec. Mstr. April 26, 2017) (motion for review denied, 135 Fed. Cl. 107, 111–12 (2017). But *Abbott* does not provide special masters unfettered discretion to cut fees. On the contrary, *Abbott* stands for the same proposition as articulated in *Raymo*: special masters must provide a clear explanation for the percentage reduction. *Abbott*, 135 Fed. Cl. at 111 (holding the special master "sufficiently explained that these reductions were the result of his line-by-line analysis of the billing records, and were based on records he found to be vague"); *Raymo*, 129 Fed. Cl. at 703 (finding that the special master "found many of the specific billing entries

unreasonable" to justify a reduction). Here, no such explanation was provided for the further twenty-five percent reduction.

Second, the Chief Special Master invents a category for "general reductions" without explaining his reason for doing so. While special masters can make downward departures to fee awards, they must be "based on other specific findings" related to the fees. *See Avera*, 515 F.3d at 1348 (finding that deviation in award was appropriate after applying the appropriate forum rate) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (holding that fee adjustment based on prevailing market rate was appropriate)). Here, the two brief reasons provided to support the general reduction—the short length of the case and the litigation strategy—are not rooted in law as they are not accompanied by specific findings. This stands in contrast with the thirty percent reduction, which was based on delineated reasons and recognized categories for lowering fees. *See Guerrero*, 124 Fed. Cl. at 160; *Hines*, 22 Cl. Ct. at 756; *Raymo*, 129 Fed. Cl. at 703. There is no authority permitting "general reductions." Simply put, the Chief Special Master cannot create a new category without explanation—particularly one that is unrelated to any established precedent for attorneys' fees reductions.

Third, the Chief Special Master abused his discretion when he created a new process for fee reductions. Rather than reducing the fees by one total percentage, he reduced the award a second time by a percentage of an already reduced whole. In other words, he reduced by a percentage of a percentage—and with no explanation as to why. This is not the first time the Chief Special Master used this process. *See Atjian v. Sec'y of Health & Hum. Servs.*, No. 21-1413V, 2022 WL 17587757, at *11–13 (Fed. Cl. Spec. Mstr. Oct. 10, 2022). But two wrongs do not make a right. No authority existed in *Atjian* to do so, and no authority exists now. *See Abbott ex. rel. R.A. v. Sec'y of Health & Hum. Servs.*, 150 Fed. Cl. 421, 427 (2020) (affirming one-time reduction of ten percent of expert fees).

Indeed, some cases may call for certain fees to be reduced by one percentage and other fees to be reduced by another. *See Raymo*, 129 Fed. Cl. at 703 (finding separate reductions of forty percent for one law firm and twenty percent for another). However, the unexplained practice of stacked percentage reductions lends itself to divergent outcomes based on which special master is assigned. Proper discretion requires clear explanation—especially when novel approaches are implemented—and such an explanation is missing here.

Furthermore, the general fee reduction cuts against the intended generosity of the Vaccine Act. "Remedial legislation like the Vaccine Act should be construed in a manner that effectuates its underlying spirit and purpose." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1363 (Fed. Cir. 2012) (citation omitted). "Congress recognized that having to shoulder attorneys' fees could deter victims of vaccine-related injuries from seeking redress." *Id.* The general fee reduction would discourage petitions, contrary to the spirit of the Vaccine Act.

Each of these reasons independently supports a finding that the Chief Special Master abused his discretion. As a result, Ms. Stratton's motion is granted as it relates to the twenty-five percent reduction. Petitioner shall be awarded attorneys' fees in the amount of $7,697.90, equal to seventy percent of the fee request.

### C. Respondent's Objection to Costs Award

The Chief Special Master awarded Ms. Stratton her full request for costs totaling $1,178.96. Respondent objects, relying on its argument that Petitioner lacked a reasonable basis for her claim. Resp't's Resp. to Pet'r's Memo. of Objections at 16, ECF No. 50 ("Respondent maintains that the Chief Special Master erroneously found that there was a reasonable basis for [P]etitioner's claim. Petitioner's application for attorneys' fees and costs therefore should be denied in its entirety."). However, for the reasons previously discussed, the Chief Special Master was correct to find that there was a reasonable basis for bringing the claim. Therefore, the request is granted, and Petitioner shall be awarded $1,178.96 in costs. In total, attorneys' fees and costs amount to $8,876.86.

## IV. Motion for Disqualification

Petitioner's motion fails procedurally for two reasons. First, it is moot. The Chief Special Master already adjudicated Ms. Stratton's claims. Second, the Court has no remedial authority. Counsel points to the general statutory prohibition against bias in the judiciary, 28 U.S.C. § 455, but this does not provide authority to remove the Chief Special Master. However, this is not Petitioner's counsel's first disqualification motion—and likely will not be the last. *See* Pet'r's Reply Ex. A at 2, ECF No. 51-1. Petitioner's counsel filed motions to disqualify the Chief Special Master in over fifty OSM cases, as well as in three Court of Federal Claims cases. *Id.* The Chief Special Master stayed all such matters before him pending guidance from the Court of Federal Claims. *Id.* Thus, while unnecessary for disposition of this case, the following analysis addresses why this motion also fails substantively.

### A. Legal Standards

"A judge is presumed to be impartial, and the movant bears a 'heavy burden' of proving otherwise." *Banks v. United States*, 2016 WL 692187, at *3 (Fed. Cl. Feb. 19, 2016) (citing *Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550, 557 (Fed. Cir. 1996)). To prove partiality, a petitioner must point to an "extrajudicial source" of the bias. *See Liteky v. United States*, 510 U.S. 540, 550 (1994). Judicial rulings and "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555–56.

### B. Analysis

A special master "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *see, e.g.*, *M.G. v. Sec'y of Health & Hum. Servs.*, No. 17-743V, 2022 WL 1311661 (Fed. Cl. May 3, 2022) (applying § 455 to special masters). Here, Petitioner moves to disqualify "Chief Special Master Corcoran from all Gardasil cases now pending and filed in the future" based on his skepticism of the merits. Pet'r's Mot. for Disq. at 10. However, Petitioner's "unsubstantiated allegations of bias and prejudice amount to nothing more than mere displeasure with the [Chief Special Master's] rulings." *Flowers v. United States*, 321 F. App'x 928, 935 (Fed. Cir. 2008).

### 1. The Chief Special Master's Skepticism of Causation Generally

First, Petitioner asserts that the Chief Special Master's alleged views on HPV vaccine injury cases generally constitutes bias. Pet'r's Mot. for Disq. at 2 ("Chief Special Master Corcoran represents himself to have expertise with Gardasil and the types of injuries Gardasil can cause. He does not."). This is meritless. Special masters are permitted to rely on opinions formed in other proceedings. *Cf. Liteky*, 510 U.S. at 550–51 (excluding knowledge and opinions acquired from judicial proceedings from the definition of bias and prejudice). No extrajudicial source of the bias is identified, so the Court considers whether the Chief Special Master demonstrates a "deep-seated favoritism or antagonism" towards HPV vaccine injury litigation. *Id.* He does not.

While the Chief Special Master states that he has "become extremely skeptical of assertions that this particular vaccine [Gardasil] can cause longer-term non-specific symptoms, or otherwise interfere with the autonomic nervous system," *Atjian*, 2022 WL 17587757, at *10, he formed that opinion following a review of similar cases. The Chief Special Master is permitted to use his knowledge from prior cases involving analogous evidence.

As Respondent highlights, the Chief Special Master is not alone in his skepticism of the merits. Resp't's Resp. to Mot. for Disq. at 4–7. Respondent cites thirteen cases in which different special masters denied compensation when a petitioner alleged injury due to the HPV vaccine. *Id.* In the four cases cited where petitioners appealed, the Court of Federal Claims affirmed the decisions. *Id.* at 10–12 (citing *J.S. v. Sec'y of Health & Hum. Servs.*, 164 Fed. Cl. 314 (2023) (affirming dismissal of claim that HPV vaccine led to POTS injury in part because proffered medical theory of causation was insufficient); *Hughes v. Sec'y of Health & Hum. Servs.*, 154 Fed. Cl. 640, 649 (2021) (holding special master's decision that evidence failed to establish causal connection between HPV vaccination and POTS was not arbitrary); *E.S. v. United States*, 154 Fed. Cl. 149, 163 (2021) (finding special master reasonably concluded that the petitioner failed to establish that the HPV vaccine could cause POTS); *K.L. v. Sec'y of Health & Hum. Servs.*, 134 Fed. Cl. 579, 608 (2017) (affirming special master's finding that petitioner was unable to prove by preponderance of the evidence that the HPV vaccine caused her injury)).

Even if Petitioner were right, recusal is not justified. *See Liteky*, at 550–51 ("The judge . . . may[] . . . be exceedingly ill disposed towards the defendant, . . . [b]ut the judge is not thereby recusable for bias or prejudice."). Significantly, the Chief Special Master found that Petitioner had a reasonable basis to bring her claim based on the medical evidence. He also found sufficient evidence in her favor for the underlying attorneys' fees and costs claims. Furthermore, the Chief Special Master did not make a final determination on the merits. Indeed, the only factual finding was made in Petitioner's favor. Thus, on balance, the Petitioner has not shown bias sufficient to overcome the high burden required for judicial disqualification.

### 2. The Chief Special Master's Treatment of Petitioner's Counsel

Petitioner also fails to overcome the "heavy burden" of proving the Chief Special Master is partial based on his treatment of her counsel. First, the Court is not swayed by counsel's argument that the Chief Special Master's word choice demonstrates prejudice. *See Liteky*, 510 U.S. at 556. For instance, counsel cites the Chief Special Master's reference to Petitioner's

litigation "stratagem" and use of the word "untenable" to describe the relationship between counsel and the Chief Special Master. Pet'r's Reply at 2–3, 8. Petitioner asserts these characterizations require disqualification. However, "judicial remarks during the course [of a case] that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. The Chief Special Master's words do not "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* As "[t]he Supreme Court has made crystal clear . . . litigants may not make the trial judge into an issue simply because they dislike the court's approach or because they disagree with the ultimate outcome of the case." *United States v. Gordon*, 61 F.3d 263, 267–68 (4th Cir. 1995) (citing *Liteky*, 510 U.S. 540).

Vaccine Rule 2 of the United States Court of Federal Claims sets forth the requirements for commencing an action: a claimant must file a petition that includes specific allegations and attach documents including medical records. Vaccine RCFC 2(b)(c). Counsel disagrees with the way in which the Chief Special Master is enforcing these rules, but his "mere displeasure" with how the cases are proceeding does not amount to bias. *See Flowers*, 321 F. App'x at 935. The undersigned is not alone in this conclusion. In *Fetters*, the court also found "[t]hese statements do not create the appearance of bias." Op. and Order at 10, No. 21-928, ECF No. 42 (unredacted version).

Petitioner also raises concerns regarding the Chief Special Master's statements indicating he would rule similarly should counsel bring the same issues and motions in the future. The Court finds no merit here. The Chief Special Master did not portend that every case alleging injury by the HPV vaccine would have the same outcome. Moreover, judges, including special masters, may appropriately—and explicitly—rely upon their experience. *See Sabella*, 86 Fed. Cl. at 205–06. For example, as discussed extensively above, the Chief Special Master may rely on his experience with Petitioner's counsel in determining appropriate attorneys' fee awards. The fact that OSM informed counsel that they do "not expect, for example, that cases filed simply to check off the 'Vaccine Program' box will require significant attorney time" does not suggest the Chief Special Master is prejudging cases. Pet'r's Mot. for Disq. Ex. B, at 4.

Finally, Petitioner's counsel also notes that the Chief Special Master has not yet ruled on "over one hundred pending motions for fees and expenses from [Petitioner's] Counsel." Pet'r's Mot. for Disq. at 3. However, Petitioner provides no evidence suggesting that the Chief Special Master is deliberately targeting Gardasil cases or counsel's cases in particular. While Petitioner points to the fact that Vaccine Program cases were down in 2022 by fifty percent, *id.* at 3 n.2, he relies solely on this statistic to measure the court's current caseload. Other explanations for delay exist, including the backlog of cases and current volume of fee petitions before the Chief Special Master. *See Fetters*, No. 21-928, at 11. This delay does not give the Court concern that there is a "high degree of . . . antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555.

Petitioner's claims do not overcome the presumption of impartiality. Thus, Petitioner's Motion for Disqualification is denied.

## V. Conclusion

For the foregoing reasons, the Petitioner's Motion for Review is **GRANTED-IN-PART** and **DENIED-IN-PART**. Respondent's Motion for Review is **DENIED**. The Chief Special Master's attorneys' fees and costs decision is **AFFIRMED-IN-PART** and **REVERSED-IN-PART**. The Clerk is directed to enter judgment as follows:

> A lump sum of $8,876.86 in the form of a check made payable to Petitioner and Petitioner's attorney, Andrew Downing, for attorneys' fees and costs available under 42 U.S.C. § 300aa-15(e).

Petitioner's Motion for Disqualification is also **DENIED**.

**IT IS SO ORDERED.**

s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge