No. 2023-2230

# United States Court of Appeals
# For the Federal Circuit

**ABIGAIL STRATTON**

*Petitioner-Appellee*,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**

*Respondent-Appellant*.

**Appeal from the United States Court of Federal Claims**
**Case No. 20-1515V**
**The Honorable Judge Carolyn N. Lerner**

## BRIEF OF PETITIONER-APPELLEE

ANDREW D. DOWNING
DOWNING, ALLISON & JORGENSON
3030 N. Central Avenue, Suite 507
Phoenix AZ, 85012
(480) 701-0999
adowning@DAJ-Law.com

# TABLE OF CONTENTS

I. STATEMENT OF RELATED CASES………………………………… 1

II. STATEMENT OF JURISDICTION…………………………………… 1

III. STATEMENT OF ISSUES…………………………………………….. 2

IV. STATEMENT OF THE CASE…………………………………………. 2

A. The Vaccine Injury Compensation Program……………………… 2

B. Relevant Facts …………………………………………………… 4

C. Procedural History ………………………………………………. 5

V. STANDARD OF REVIEW ……………………………………………. 9

VI. ARGUMENT…………………………………………………………… 11

The Chief Special Master's determination that reasonable basis was present, and the COFC affirmation on this issue, is supported by ample objective evidence ………………….……………… 11

A. Reasonable Basis…………………………………….……..…….. 11

B. Objective Evidence Supporting Reasonable Basis ……………… 14

C. Medical Literature Supporting a Causal Connection Between HPV Vaccination and Petitioner's Injuries……….……………… 16

D. Under-oath Testimony Supporting Reasonable Basis…………… 21

E. The Reasonable Basis Determination by the Chief Special Master, and Affirmed by the COFC……….……………………… 22

VII. CONCLUSION………………………………………….……………… 24

CERTIFICATE OF COMPLIANCE……………………………………… 26

CERTIFICATE OF SERVICE…………………………………………… 26

# TABLE OF AUTHORITIES

## CASES

*Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*,
462 U.S. 87, 105 (1983)………………………………………………… 10

*Chuisano v. United States*, 116 Fed. Cl. 276, 284 (2014)
(citations omitted)……………………………………………………..10,12

*Cottingham v. Sec'y of Health & Human Servs.*,
971 F.3d 1337 (Fed. Cir. 2020)……………………………………….. 8,13,15

*DeConstanzo v. GlaxoSmithKline PLC*,
643 F.Supp.3d 340, 2022 WL 17338047 at *5
(E.D.N.Y. Nov. 29, 2022) ………………………………………………...4

*Graham v. Health & Human Servs.*, 124 Fed. Cl. 574, 578 (2015)
(quoting *Masias*, 634 F.3d at 1290) (other citations omitted)………… 10

*James-Cornelius v. Sec'y of Health & Human Servs.*,
984 F.3d 1374, 1382 (Fed.Cir. 2021)……………………..………. 13,15

*Masias v. Sec'y, HHS*, 634 F.3d 1283, 1288
(Fed. Cir. 2011)418 F.3d 1274 (Fed. Cir. 2005)…………..…..……... 9,10

*McKellar v. Sec'y of Health & Human Servs.*,
101 Fed. Cl. 297, 303 (2011)…………………………………………. 12

*Motor Vehicle Mfrs. Ass'n of the United States v.*
*State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)…………………… 11

*OMV Med., Inc. v. United States*,
219 F.3d 1337, 1343 (Fed. Cir. 2000) …………………………………. 11

*Reilly's Wholesale Produce v. United States*,
73 Fed. Cl. at 705, 709 (2006)……………………………………….. 11

*Rodriguez v. Sec'y*, *HHS*, 632 F.3d 1381, 1383–84 (Fed. Cir. 2011) (citing *Avera v. Sec'y, HHS*, 515 F.3d 1343, 1347 (Fed. Cir. 2008)) ............ 9, 10

## STATUTES

28 U.S.C. § 1295(a)(3)............ 1

42 U.S.C. § 300aa-12............ 1

42 U.S.C. § 300aa-12(a)............ 1

42 U.S.C. § 300aa-12(e)(2)(B)............ 10

42 U.S.C. § 300aa-11............ 1

42 U.S.C. § 300aa-1 to 34............ 2

42 U.S.C. § 300aa-15(e)(1) ............ 12

## I. STATEMENT OF RELATED CASES

No appeal in or from this case is currently pending before the Supreme Court, this Court, or any other Circuit Court of Appeals. To the knowledge of Petitioner-Appellee, Abigail Stratton, no case(s) currently pending in this or any other tribunal will directly affect, or be directly affected by, this Court's decision in this appeal.

## II. STATEMENT OF JURISDICTION

Petitioner agrees with the Secretary that jurisdiction is proper. The Court of Federal Claims had subject matter jurisdiction over the claim under 42 U.S.C. § 300aa-12, which gives jurisdiction over claims under the National Vaccine Injury Compensation Program to the United States Court of Federal Claims. 42 U.S.C. § 300aa-12(a). The original petition was filed under 42 U.S.C. § 300aa-11, seeking compensation under the National Vaccine Injury Compensation Program.

Final judgment in the United States Court of Federal Claims was entered on May 31, 2023, and the Secretary timely appealed on July 28, 2023. The United States Court of Appeals for the Federal Circuit has "exclusive jurisdiction . . . of an appeal from a final decision of the United States Court of Federal Claims." 28. U.S.C. § 1295(a)(3).

## III. STATEMENT OF THE ISSUES

In this case filed under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34, as amended ("Vaccine Act" or "Act"), the issue in this appeal is whether the United States Court of Federal Claims ("COFC") correctly held that the Chief Special Master appropriately exercised his discretion when he determined that Petitioner-Appellee Abigail Stratton presented sufficient evidence to establish a reasonable basis for her claim, and she therefore is eligible to receive an award of attorneys' fees and litigation costs under the Act.

## IV. STATEMENT OF THE CASE

### A. The Vaccine Injury Compensation Program

At the outset, the Vaccine Act's purpose must be examined, as the Secretary laces his brief with editorial comments that Ms. Stratton and other similarly situated victims of the Gardasil vaccine are doing something wrong when they elect to opt out of the Vaccine Program to pursue a third party. For example, at page 9 of the Secretary's brief, he states that "Ms. Stratton made it clear that she filed her Petition only because she [was] statutorily compelled to initiate this claim prior to pursuing a cause of action against Merck directly".

**At no time** did Petitioner say that she filed this claim "only" because of the administrative exhaustion requirement in the Vaccine Act. Petitioner was injured by Gardasil, a covered vaccine in the VICP. If the VICP treated had Gardasil victims fairly and with expediency, these victims would gladly take an award from the VICP. However, when these cases have been prejudged, and more than 240 days have passed, they have the option of withdrawing their petition. The Secretary also makes note multiple times of the hundreds of similarly situated victims filing claims in the VICP to exhaust their administrative remedy in the same fashion as Ms. Stratton. While these issues are wholly irrelevant to a determination of reasonable basis in the instant case, the Secretary should recognize this as a safety signal for this vaccine.

Further, even if the Petitioner did file the case in the VICP just to be able to file a civil action against Merck, that fact is of no import. Special Masters, the COFC, and federal district courts have repeatedly held that Petitioners withdrawing from the Vaccine Program at 240 days are doing exactly what they are supposed to do under this circumstance.

> Permitting a plaintiff to exhaust their administrative remedies by withdrawing a petition lacking medical records after 240 days does not subvert the purpose and structure of the NCVIA. Congress designed a system in which **a claimant in fact may, if he so chooses, enter and exit the Program without having made a true effort to prove that his injury was vaccine-caused. Rather, a claimant may, if he desires, merely treat the Program as a 240–day delay before filing a tort suit, without giving the assigned special master a true opportunity to evaluate the merits of the claim.** Congress did not make the Program the exclusive remedy for vaccine-related injuries.

> Indeed, a petitioner who loses in Vaccine Court may reject the verdict and then file a new action in federal court. 42 U.S. Code § 300aa–21(a). **For these reasons, a petitioner's right to withdraw a petition and file an action in federal court if the Vaccine Court does not render a decision within 240 days is not a "loophole" of the NCVIA, but rather by design**.

*DeConstanzo v. GlaxoSmithKline PLC*, 643 F.Supp.3d 340, 2022 WL 17338047 at *5 (E.D.N.Y. Nov. 29, 2022)(emphasis added). As stated above, Congress did not intend the Vaccine Program to be to only remedy available to a victim. In electing to withdraw their petitions when the VICP fails to act within 240 days, these victims are doing exactly what Congress contemplated under the Vaccine Act.

### B. Relevant Facts

Petitioner will provide a brief statement of facts for context of Ms. Stratton's claim. Ms. Stratton was born on August 15, 1998. Appx25, ¶ 1. On November 6, 2017, Ms. Stratton received the Gardasil vaccination and subsequently developed POTS[1] and autonomic dysfunction. *Id.* at ¶ 9; Appx41. Her medical chart is consistent regarding the injury claimed and its correlation to vaccination.

Because of her adverse reaction, she did not complete the Gardasil series. The records state "**Pt also reports after her first HPV vaccine, she had a reaction and**

[1] POTS – Postural Orthostatic Tachycardic Syndrome: A condition involving impairment of the autonomic nervous system that causes a number of symptoms when transitioning from lying down to standing up, such as a fast heart rate, dizziness and fatigue. https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots

**doesn't want to complete the series**." Appx35. The records also state "**Her PMH is significant for recent episodes of palpitations, syncope, and anxiety. She has had multiple visits to the ED and is currently being worked up as an outpatient for POTS. Thinks it may be related to her Gardasil vaccine…**" Appx61. Petitioner's complaints after receipt of Gardasil include headache and dizziness (Appx58), nausea (Appx54), and abdominal pain (Appx60).

Petitioner has a unifying diagnosis of autonomic dysfunction, with confirmation of POTS. Appx60. Even simple orthostatic vitals revealed an exaggerated tachycardic response from supine to standing:

| | **Heart Rate** | **Blood Pressure** |
|---|---|---|
| Supine | 80 | 122/70 |
| Upright: Immediate | 88 | 120/65 |
| Upright: 2 Minutes | 108 | 112/60 |

*Id.* That is a significant tachycardic response in just two minutes. This is a classic Gardasil injury involving the autonomic nervous system, supported by Ms. Stratton's medical chart, her under-oath statement, medical literature, and the manufacturer's own product insert. The Chief Special Master found that there was sufficient factual and medical evidence to satisfy the good faith and reasonable basis standard, and the COFC affirmed the Chief Special Master's findings in this regard.[2]

[2] The Secretary does not contest that good faith exists in this case. The only issue in this appeal is reasonable basis.

### C. Procedural History

On November 2, 2020, Petitioner filed the Petition in this case alleging that her Postural Orthostatic Tachycardia Syndrome ("POTS") and autonomic dysfunction were caused-in-fact by the Gardasil vaccination received on November 6, 2017. Appx27, ¶ 9. Per the Chief Special Master's instructions, the undersigned and Petitioner worked the case up like any other VICP file. An investigation into the merits of the case was undertaken. Altogether, **19** exhibits were filed supporting the claim, including Ms. Stratton's medical records, supporting medical literature, the Gardasil Product Insert, and an under-oath witness statement from the Petitioner - in complete compliance with the Vaccine Act.

On June 30, 2021, the Court issued the "Formal Notice – Special Processing Unit" stating that "[t]he statutory 240-day period for the special master's issuance of a decision in this case has expired." Appx21. On July 6, 2021, Petitioner filed a Notice to Withdraw Petition in order to pursue her claim against Merck directly. On July 8, 2021, Chief Special Master Corcoran issued the Order Concluding Proceedings. *Id.*

On July 12, 2021, Petitioner filed Petitioner's Motion for Final Attorneys' Fees and Costs. Appx184. On July 23, 2021, Respondent filed Respondent's Opposition to Petitioner's Request for Fees and Costs. Appx192. On July 27, 2021, Petitioner filed Petitioner's Reply to Respondent's Opposition to Petitioner's Motion

for Final Attorneys' Fees and Costs. Appx204. On November 29, 2022, Petitioner filed an additional Notice of Additional Authority, Appx219, and a 2022 brand new article from world-renowned researchers in autonomic dysfunction/POTS, Appx222. Both new medical literature and other opinions from other Special Masters in the Vaccine Program were continuing to be issued undermining the Chief Special Master's flawed belief that these individuals were not injured by Gardasil, or by filing the claim in the first place, they were doing something improper.

On February 9, 2023, a year-and-a-half after Petitioner's Motion for Fees was filed, the Chief Special Master issued a Decision on Attorney's Fees and Costs in the instant case. Appx2. The Decision states "Petitioner withdrew the case just over eight months later, however – well before the claim's substantive basis could be evaluated, and for the express purpose of litigating the claim in a different manner and alternative forum." *Id*. The Special Master awarded some attorney's fees, yet he found ". . . she is otherwise entitled to a fees award, **despite the circumstances of dismissal**, although a reduction in the amount of fees awarded is appropriate." Appx3 (emphasis added).[3] The Decision also states "[t]his case (and numerous others like it) filed by the same counsel alleges an injury relating to the

3 The "circumstances of dismissal" have nothing to do with a fee and expense reimbursement analysis. Petitioner exercised her statutory rights to withdraw from the Vaccine Program.

administration of an HPV vaccine, but has been withdrawn in accordance with the terms of the Vaccine Act and Rules, solely for the purpose of combining it with like cases against the vaccine manufacturer pending in other fora." *Id.* When discussing whether Petitioner met reasonable basis, the Special Master stated that "…Petitioner has filed sufficient medical records to satisfy the exceedingly low evidentiary standard at play here." Appx5.

Both parties sought review by the COFC. Ms. Stratton appealed the Chief Special Master's wholesale reduction of her requested attorneys' fees. Appx12. The Secretary challenged the Chief Special Master's reasonable basis determination. Appx11. The COFC (Lerner, J.) issued its Opinion on May 31, 2023. Appx9-18.

As to reasonable basis, the COFC correctly defined the applicable legal standard as follows:

> The burden of proof for establishing a reasonable basis for bringing the claim "is lower than the preponderant evidence standard" but is "more than a mere scintilla." *Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020). To establish a reasonable basis, petitioners must present objective evidence. *Cottingham*, 971 F.3d at 1344–45.

Appx12. The COFC correctly found that medical records "can suffice to establish reasonable basis," and held that Ms. Stratton had demonstrated reasonable basis. The Chief Special Master's reasonable basis finding was affirmed. Appx12. The COFC **agreed** with Ms. Stratton that some of the Chief Special Master's reductions on fees

and expenses were arbitrary. Appx13-14. The COFC then rendered a decision that $8,876.86 constituted a reasonable amount to award Ms. Stratton for her attorneys' fees and costs. Appx18. Judgment entered the same day. Appx1. Petitioner was willing to accept the adjudication on fees (although disagreeing with it), but the Secretary initiated the instant appeal thereafter.

As will be shown fully herein, ample evidence exists supporting reasonable basis, and Court of Federal Claims affirmation, in part, of the Chief Special Master's fee award was proper.

## V. STANDARD OF REVIEW

This Court reviews a decision of the Court of Federal Claims under the same standard as reviewing the Chief Special Master, and determines if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Rodriguez v. Sec'y*, *HHS*, 632 F.3d 1381, 1383–84 (Fed. Cir. 2011) (citing *Avera v. Sec'y, HHS*, 515 F.3d 1343, 1347 (Fed. Cir. 2008)); see also 42 U.S.C. § 300aa-12(e)(2)(B).

Discretionary rulings, such as weighing the evidence for a reasonable basis determination, are reviewed under the abuse of discretion standard. *Masias v. Sec'y, HHS*, 634 F.3d 1283, 1288 (Fed. Cir. 2011). "'Not in accordance with the law' refers to the application of the wrong legal standard, and the application of the law is

reviewed de novo." *Rodriguez*, 632 F.3d at 1384 (citing *Markovich v. Sec'y*, HHS, 477 F.3d 1353, 1356 (Fed. Cir. 2007)).

Under the abuse of discretion standard,

> A court would have to rule that a special master's decision was: (1) . . . clearly unreasonable, arbitrary, or fanciful; (2) . . . based on an erroneous conclusion of the law; (3) . . . clearly erroneous; or (4) the record contains no evidence on which the . . . [special master] rationally could have based his decision.

*Chuisano v. United States*, 116 Fed. Cl. 276, 284 (2014) (citations omitted). As Judge Braden observed, the COFC shows great deference to a special master's reasonable basis determination: "In the context of Vaccine Act cases, an abuse of discretion generally does not occur when a Special Master 'considered the relevant evidence, drew plausible inferences, and articulated a rational basis for his finding[.]'" *Graham v. Health & Human Servs.*, 124 Fed. Cl. 574, 578 (2015) (quoting *Masias*, 634 F.3d at 1290) (other citations omitted). The underlying finding that reasonable basis existed for the claim in the first place given the facts of this case falls squarely within the Chief's discretionary powers articulated above.

The arbitrary and capricious prong of this standard recognizes the possibility of a zone of acceptable results and requires only that the final decision reached by the special master be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decision making." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983). The Supreme Court

burnished these twin requirements in *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), identifying four grounds upon which a holding of arbitrary and capricious action could be based: 1. If the Court has relied on factors which Congress has not intended it to consider; 2. If the Court has entirely failed to consider an important aspect of the problem; 3. If the Court offered an explanation for its decision that runs counter to the evidence before it; or 4. The Court's decision is so implausible that it could not be ascribed to a difference in view or the product of the Court's expertise. *Id*. at 43; see also *OMV Med., Inc. v. United States*, 219 F.3d 1337, 1343 (Fed. Cir. 2000); *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. at 705, 709 (2006). None of these articulated issues are present in the COFC's affirmation of the Chief Special Master's reasonable basis determination.

## VI. ARGUMENT

**The Chief Special Master's determination that reasonable basis was present, and the COFC affirmation on this issue, is supported by ample objective evidence.**

### A. Reasonable Basis

Reasonable attorneys' fees and costs can be awarded "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1). In contrast to the subjective standard relating to the good faith

requirement, the reasonable basis requirement is "objective, looking not at the likelihood of success of a claim but more to the feasibility of the claim." *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011).[4] The amount of evidence needed for reasonable basis is "something less than preponderant evidence." *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014). The reasonable basis inquiry "is broad enough to encompass any material submitted in support of the claim at any time in the proceeding, whether with the petition or later." *Id.* at 287.[5]

As has been well-stated by the Federal Circuit, a treating doctor opining on causation is not required for reasonable basis.

> First, the Special Master emphasized the absence of any express medical opinion on causation. J.A. 74 ("None of E.J.'s medical providers associated his symptoms with his vaccinations."). But absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has a reasonable basis, especially when the case is in its early stages and counsel may not have had the

---

[4] Whether the Petition was brought in good faith is not in dispute in this case.

[5] At footnote 12 of Appellant's brief, the Secretary muses that the Court's formulation of the reasonable basis standard could be equated with the "substantial evidence" standard. The support for this includes a handful of cases outside of this jurisdiction. The undersigned encourages this Court to refuse to equate "substantial evidence" with the reasonable basis standard. "Substantial" in common parlance means "considerable in quantity" or "significantly great". https://www.merriam-webster.com/dictionary/substantial. This is yet another effort by the Secretary to modify Petitioners' burden of proof on reasonable basis by invoking an inappropriate adjective that the Secretary would then use to elevate Petitioners' burden in the VICP.

> opportunity to retain qualified experts. See *Cottingham*, 971 F.3d at 1346 (explaining that medical records paired with the vaccine's package insert constituted objective medical evidence that may support finding a reasonable basis of causation). Further, for purposes of establishing a reasonable basis for a claim, "[m]edical records can support causation even where the records provide only circumstantial evidence of causation." *Id.*

*James-Cornelius v. Sec'y of Health & Human Servs*., 984 F.3d 1374, 1382 (Fed.Cir. 2021). Thus, any position from Respondent that reasonable basis was deficient due to the presence or absence of treating physician opinion on vaccine causation is flawed.

On September 25, 2018, the Court of Federal Claims issued its decision in *Bekiaris* regarding an alleged injury of skin rashes post-HPV vaccination. *Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108 (2018). The Court of Federal Claims stated the following:

> Because causation was a necessary element of Ms. Bekiaris's claim, she had to provide some evidence of a causal relationship between administration of the vaccine and her injuries to establish reasonable basis for the claim. The type and amount of evidence has never been delineated with specificity, and it can vary depending on the vaccine administered and the injury suffered. **Nonetheless, it can be said with confidence that the quantum of evidence of causation to show reasonable basis is markedly less than that needed to prove entitlement.**

*Bekiaris*, 140 Fed. Cl. at 114 (emphasis added). Additionally, "[i]n the circumstance of this case, to establish a reasonable basis for a claim, the evidence need only have

been sufficient to give the petitioner a reasonable expectation of establishing causation." *Id.*

**B. Objective Evidence Supporting Reasonable Basis**

Some of the underlying relevant facts and medical records were discussed earlier. Petitioner received the first dose of the Gardasil vaccine on November 6, 2017. Appx41. Because of her adverse reaction, she did not complete the series. "Pt also reports after her first HPV vaccine, she had a reaction and doesn't want to complete the series." Appx35. "Her PMH is significant for recent episodes of palpitations, syncope, and anxiety. She has had multiple visits to the ED and is currently being worked up as an outpatient for POTS. **Thinks it may be related to her Gardasil vaccine…**" Appx61.

Petitioner's complaints after receipt of Gardasil include headache and dizziness (Appx58), nausea (Appx54), and abdominal pain (Appx60). These complaints are all reflected in the Gardasil product insert. Appx101, Appx104. Product inserts are governed by 21 CFR § 201.57. The requirements for adverse reaction information in the product insert is listed at 21 CFR § 201.57(c)(7) which states with emphasis added:

> (7) Adverse reactions. This section must describe the overall adverse reaction profile of the drug based on the entire safety database. For purposes of prescription drug labeling, an adverse reaction is an undesirable effect, reasonably associated with use of a drug, that may occur as part of the pharmacological action of the drug or may be

> unpredictable in its occurrence. This definition does not include all adverse events observed during use of a drug, **only those adverse events for which there is some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event**.

Therefore, if a symptom or event is listed in the manufacturer's product insert, that means that the manufacturer has determined that it is a symptom "for which there is some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event."

Pertinent to Petitioner's case, her complaints of headache, nausea, dizziness, abdominal pain and myalgias are all listed in the Gardasil product insert as symptoms occurring after Gardasil vaccination. This Circuit has already indicated that product inserts are probative evidence supporting reasonable basis. *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337 (Fed. Cir. 2020); *James-Cornelius v. Sec'y of Health & Human Servs*., 984 F.3d 1374 (Fed. Cir. 2021). In other words, if a Petitioner has the same documented symptoms post-vaccination that are reflected in that vaccination's product insert, that can support a reasonable basis to believe there is a causal relationship between the vaccination and the occurrence of the documented symptoms.

Petitioner also has a unifying diagnosis of autonomic dysfunction, with confirmation of POTS. Appx60. Even simple orthostatic vitals revealed an exaggerated tachycardic response:

| | Heart Rate | Blood Pressure |
|---|---|---|
| Supine | 80 | 122/70 |
| Upright: Immediate | 88 | 120/65 |
| Upright: 2 Minutes | 108 | 112/60 |

*Id.* That is a nearly 40 bpm increase in only two minutes, consistent with POTS. The diagnosis and injury in this case was well pled, and it is confirmed in her medical chart.

**C. Medical Literature Supporting a Causal Connection Between HPV Vaccination and Petitioner's Injuries.**

This condition is well documented in medical literature as being triggered by the HPV vaccine. See S. Blitshteyn, "Postural tachycardia syndrome following human papillomavirus vaccination"; *European Journal of Neurology* 2014, 21: 135-139; Martinez-Lavin, "Hypothesis: Human papillomavirus vaccination syndrome-small fiber neuropathy and dysautonomia could be its underlying pathogenesis"; *Clin Rheumatol.* 2015 Jul;34(7): 1165-9; T. Kinoshita et al. "Peripheral sympathetic nerve dysfunction in adolescent Japanese girls following immunization with the human papillomavirus vaccine"; *Intern Med* 2014;53:2185-200; L. Brinth, "Orthostatic intolerance and postural tachycardia syndrome as suspected adverse effects of vaccination against human papillomavirus"; *Vaccine* 2015 May 21;33(200:2602-5); Ozawa et al., "Suspected Adverse Effects After Human Papillomavirus Vaccination: A Temporal Relationship Between Vaccine

Administration and the Appearance of Symptoms in Japan"; *Drug Safety*, (2017). These articles reflected at Appx143-183.

The Ozawa article, Appx173, is extremely telling for reasonable basis. There, the authors analyzed the various reports of injury after HPV vaccination coupled with their own clinical experience treating these victims. They articulated a set of symptoms typically seen in the HPV syndrome that physicians are seeing all over the world. They ultimately list ten diagnostic criteria as "Major symptoms" associated with HPV vaccination. Having five or more of these Major symptoms would place the victim in the clinical category of having a **"probable"** injury from HPV vaccination. These symptoms are:

II. Major symptoms

1. Prolonged general fatigue (lasting for more than 4 weeks)
2. Chronic headache, especially after standing up
3. Widespread pain (migratory joint pain, limb pain, or myalgia)
4. Limb shaking (tremor or myoclonus like)
5. Dysautonomic symptoms (orthostatic fainting, postural orthostatic tachycardia, or delayed or rapid gastrointestinal motility)
6. Motor dysfunction (frequent sudden falls, limb weakness or paralysis, gait disturbance)
7. Abnormal sensation (coldness in limbs, limb paresthesia, photophobia)
8. Sleep disturbance (hypersomnia, insomnia)
9. Learning impairment (memory impairment, difficulties in concentration, verbal dyspraxia)
10. Menstrua abnormality (amenorrhea, hyper menorrhea, irregular menstruation)

Appx176. As stated above, Ms. Stratton has 1. Fatigue; 2. Headache; 3. Pain; 4. Shaking; 5. Dysautonomic symptoms (referenced as POTS, orthostatic intolerance, and digestive issues); 7. Abnormal sensation (referenced by Ms. Stratton as inability to tolerate heat and horrible light sensitivity, as well as paresthesia – Appx229), 8. Sleep disturbance (referenced by Ms. Stratton as hypersomnolence – Appx139, ¶4); and 9. learning impairment (referenced by Ms. Stratton as "brain fog" – Appx141, ¶18). Therefore, Ms. Stratton has eight of the ten major symptoms associated with an injury due to the HPV vaccination. Under the Ozawa criteria at Appx173, **Ms. Stratton has a <u>probable</u> injury from Gardasil** – well above the scintilla test for reasonable basis for bringing a claim in the first place.

Perhaps even more telling is new medical research continuing to come out. Petitioner submitted a Notice of Additional Authority when a 2022 review article was published in the Journal of Autoimmunity. The article is titled "Autoimmunity in patients reporting long-term complications after exposure to human papilloma virus vaccination" Appx222. The article was subjected to extensive peer review through the publisher, Elsevier. *Id.* Excerpts from this article are not only telling, but they are medically-accepted principles as to the HPV vaccination and injuries like Ms. Stratton's. The authors first state:

> Almost all pre-licensure studies of the HPV-vaccines used either an aluminum containing adjuvant or another vaccine as control substance [3-5] and thus have several limitations.

Appx222. That means that even the most basic safety studies conducted prior to Gardasil coming to the market are rigged. They did not use an inert placebo as a control. Next, the authors note:

> During the past years, case series on suspected side effects to the HPV vaccines have described a collection of signs that resemble symptoms in three main diagnostic entities – postural orthostatic tachycardia syndrome (POTS, 22,23,24), myalgic encephalomyelitis/ chronic fatigue syndrome (ME/CFS, 24,25), and complex regional pain syndrome (CRPS, [26]).

Appx223. That means that the Vaccine Program's continued reliance on outdated studies is problematic. POTS is a **recognized** side effect of Gardasil. Additionally:

**Table 1**

Most Frequent symptoms reported by 612 patients.

| Symptom | N | % |
|---|---|---|
| Fatigue | 562 | 92 |
| Dizziness | 560 | 91 |
| Cognitive dysfunction | 532 | 87 |
| Headache | 528 | 86 |
| Sleep problems | 499 | 81 |
| Nausea | 489 | 80 |
| Abdominal pain | 454 | 74 |
| Heart palpitation | 435 | 71 |
| Muscle weakness | 427 | 70 |
| Tics and cramps | 383 | 63 |
| Urinary problems | 346 | 57 |
| Hypermobiity | 298 | 49 |
| Pain | 294 | 48 |

Symptoms reported in a structured interview by the HPV-vaccinated cohort with possible side-effects.

Appx224. This demonstrates the common symptoms associated with HPV vaccination injury. As stated above, Ms. Stratton has many of these symptoms.

> We found a high prevalence of symptoms, such as dizziness, palpitations, nausea, and hyperactive bladder suggestive of autonomic dysfunction and quantified these by the COMPASS31 in our cohort. The patients scored overall higher than diabetic patients with known neuropathy [47] and showed a distribution of autonomic dysfunction like that seen in small fiber disease [48]. Dysregulation of cardiovascular control in the form of postural orthostatic tachycardia syndrome (POTS) has been demonstrated in patients with possible adverse events after HPV-vaccination in case reports [22,23] and in a previous analysis in our cohort [24].

Appx225. This reiterates the scientific fact that POTS continues to be a documented side-effect following HPV vaccination.

> **5. Conclusions**
>
> This study has shown that girls and young women with probable side effects to HPV-vaccination have symptoms and biological markers compatible with an autoimmune disease closely resembling that seen in ME/CFS and subsets of long-COVID. Together with previous studies, demonstrating increase morbidity in this group of patients preceding vaccination, this raises the probability that prior disease may precondition some individuals for vaccine related adverse events. The HPV=vaccine possesses a strong immunogenicity, and it is suggested that possible vulnerability should be further investigated and considered when counselling for such vaccines.

Appx226. The conclusion by these authors is self-explanatory. Further, there is no “anti-vax” sentiment being expressed here, as **the lead author of this article is Merck’s clinical study researcher for Gardasil.** *Id.*

Chief Special Master Corcoran had all of this information at the time he made his decision on reasonable basis, and despite his continually stated personal position of "disbelief" as to HPV vaccination and POTS, Ms. Stratton's injuries are the EXACT same as reported in the literature following this specific vaccination.

**D. Under-oath Testimony Supporting Reasonable Basis**

It is also telling that Respondent would like to ignore Petitioner's witness statement. Petitioner testified to intense faitigue, dizziness, headaches, and shaking that developed after her Gardasil vaccination. Appx139-Appx140, ¶¶2-6. Petitioner testified to episodes of everything going black and having to sit down on the bathroom floor to keep from passing out. Appx140, ¶7. She complained of her heart racing and postural tachycardia. Appx140, ¶¶8, 10, 11. She summed up her current condition by testifying, "I still experience horrible light sensitivity, dizziness, tachycardia, migraines, fatigue, digestive issues, brain fog, the inability to tolerate heat, and I need a chair in my shower from being unable to stand." Appx141, ¶18. Since under-oath testimony about facts which a witness has personal knowledge constitutes objective evidence for purposes of reasonable basis, Respondent's omission of Petitioner's extensive testimony as to her symptoms and their onset after Gardasil is telling.

### E. The Reasonable Basis Determination by the Chief Special Master, and Affirmed By the COFC

All the information and objective evidence above was before the Chief Special Master at the time he made his decision on reasonable basis and awarded attorneys' fees. The Chief even offered a concise explanation of Respondent's contrary arguments before overruling them:

> Regarding reasonable basis, Respondent argues that: 1) the medical records do not sufficiently support Petitioner's alleged symptoms (Opp. at 9); 2) Petitioner's treating doctors did not opine that Petitioner's HPV vaccine caused or contributed to Petitioner's problems (*Id.* at 9-10); and 3) Petitioner's affidavit should be afforded no weight due to its omissions and lack of detail (*Id.* at 10).
>
> Respondent's skepticism of the claim's likelihood of success is reasonable. But I emphasize again that reasonable basis is a notably easy-to-satisfy evidentiary standard. *Cottingham,* 971 F.3d at 1345-46. It is the "feasibility of the claim that governs, and not whether the claim was likely to prevail. *Turner*, 2007 WL 4410030, at *6. While the issues raised by Respondent would more likely than not have prevented Petitioner from obtaining compensation, Petitioner has filed sufficient medical records to satisfy the exceedingly low evidentiary standard at play here.

Appx5. In other words, the Chief Special Master considered the nature of the injury being claimed, considered the overall science, and then reviewed Ms. Stratton's medical chart for objective evidence of the injury claimed to be due to Gardasil. It is plain as day.

In reviewing the Chief Special Master's Decision and addressing the same arguments made by the Secretary, the COFC stated:

> Medical records can suffice to establish a reasonable basis. *See James-Cornelius ex rel. E.J. v. Sec'y of Health & Hum. Servs.,* 984 F.3d 1374, 1379-80 (Fed. Cir. 2021) finding that petitioner's diagnosis of POTS and other symptoms following Gardasil vaccinations negated special master's conclusion that the petitioner lacked reasonable basis). Here, Ms. Stratton provided medical records documenting that she reported symptoms following the vaccine and was subsequently diagnosed with POTS. Pet'r's Ex. 3 at 2, ECF No. 6-3 (records from Roper St. Francis Physician Partners); Medical Records, Pet'r's Ex. 4 at 133, ECF No. 6-5 (records from MUSC Health). In his Decision, the Chief Special Master found that "Petitioner has filed sufficient medical records to satisfy the exceedingly low evidentiary standard" to establish a reasonable basis. Dec. at 4. He further noted that the medical records demonstrate "that the claimant at issue did experience some post-vaccination symptoms." *Id.* Those findings satisfy the Court's' review under the arbitrary and capricious standard. Accordingly, Respondent's Motion is denied.

Appx12.

Simply put, the Secretary's portrayal of both the Chief Special Master and the COFC as failing "to perform any analysis of the evidence to determine whether it satisfied the reasonable basis standard"[6] is a mischaracterization. Special Masters need not go to the level of recitation contemplated in the Secretary's appeal, and the evidence supporting reasonable basis was reiterated by the COFC.

Ms. Stratton received Gardasil, a covered vaccination in the VICP. She manifested known vaccine-related symptoms that are well documented in her medical records. Her symptoms following receipt of the vaccination are documented in the manufacturer's product insert. Her diagnoses of autonomic dysfunction and

---

6 Appellant's Brief, p. 21.

POTS are causally connected to HPV vaccination in medical literature. Reasonable basis for bringing this claim exists.

Importantly, as this Court is aware, this is not an *Althen* analysis. Had the case remained in the Vaccine Program, experts could have been retained to address the three *Althen* prongs. Ms. Stratton chose to withdraw her claim. Nevertheless, reasonable basis for bringing this claim exists – over and above the statutory requirement that mandates a victim file a petition in this Program prior to being able to pursue the manufacturer directly.

## VII. CONCLUSION

The Chief Special Master appropriately exercised his discretion when he examined Ms. Stratton's objective evidence and concluded that it met the reasonable basis standard articulated by this Court. The COFC reviewed the Chief's findings and considered the Secretary's arguments articulated herein. The award of attorneys' fees to Ms. Stratton was reviewed by the COFC and affirmed as to the issues currently before this Court.

The Secretary produces no argument warranting overturning the Decision of the COFC. The objective evidence was considered by both the Chief Special Master and the COFC, and decisions based on that objective evidence were made and articulated on whether Ms. Stratton's Petition and submission of this case met the

reasonable basis standard. It does. Ms. Stratton requests the Court affirm the decisions below.

**RESPECTFULLY SUBMITTED** this 26th day of October, 2023.

**DOWNING, ALLISON & JORGENSON**

By: *\/s/ Andrew D. Downing*
Andrew D. Downing, AZ #030066
OK #016414
3030 N. Central Avenue, Suite 507
Phoenix, Arizona 85012
Phone: (480) 701-0999
E-mail: adowning@daj-law.com

ATTORNEYS FOR PETITIONER-APPELLEE

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   This brief contains 5,587 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(A)(7)(ii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because:

   This Brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Andrew D. Downing*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was transmitted via the ECF System to the party indicated below this 26th day of October, 2023.

**Voris E. Johnson, Jr., Senior Trial Attorney**
Torts Branch, Civil Division
**U.S. Department of Justice**
P.O. Box 146, Benjamin Franklin Station
Washington, D.C. 2044-0146

By: */s/ Andrew D. Downing*

Paper copies will also be mailed to Mr. Johnson, as Counsel of record, at the time paper copies are sent to the Court.