**2023-2230**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

ABIGAIL STRATTON,

*Petitioner-Appellee*,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

*Respondent-Appellant*.

---

Appeal from a judgment of the United States Court of Federal Claims
in Case No. 20-1515V, Hon. Carolyn N. Lerner

---

# REPLY BRIEF OF RESPONDENT-APPELLANT SECRETARY OF HEALTH AND HUMAN SERVICES

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

C. SALVATORE D'ALESSIO
Director
Torts Branch, Civil Division

HEATHER L. PEARLMAN
Deputy Director
Torts Branch, Civil Division

VORIS E. JOHNSON, JR.
Senior Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice, P.O. Box 146
Benjamin Franklin Station
Washington, D.C. 20044-0146
Tel: (202) 616-4136
voris.johnson@usdoj.gov
Attorneys for Respondent-Appellant

November 9, 2023

# TABLE OF CONTENTS

I. ARGUMENT .......................................................................................... 1

A. THE CHIEF SPECIAL MASTER'S DECISION CONTAINS LEGAL ERROR. ........................................................................ 1

1. The Court Owes No Deference To The Chief Special Master's Reasonable Basis Finding Because He Applied An Incorrect Legal Standard To The Evidence. .......................................... 1

2. The Same Reasonable Basis Standard Applies No Matter How A Petitioner Exits The Vaccine Program. ................................. 3

B. STRATTON HAS FAILED TO PROVIDE RELIABLE, OBJECTIVE EVIDENCE OF CAUSATION. ................................. 4

1. The Adverse Reactions Listed On The Gardasil Product Insert That Stratton Cites Occurred Days, Not Months, Post-Vaccination. ........................................................................ 4

2. The Medical Literature Provides No Reliable Support For Stratton's Claim. ................................................................... 7

C. THE BRIEFING IN THIS APPEAL EXPOSES THE PROBLEM WITH THE CHIEF SPECIAL MASTER'S DECISION. ................10

II. CONCLUSION..........................................................................................11

## TABLE OF AUTHORITIES

### CASES

*Argiri v. Sec'y, HHS*,
No. 17-1715V, 2022 WL 16583940 (Fed. Cl. Spec. Mstr. Oct. 11, 2022)........... 9

*Brady v. Sec'y, HHS*,
No. 19-973V, 2022 WL 17821159 (Fed. Cl. Spec. Mstr. Nov. 14, 2022) ........... 9

*Hughes v. Sec'y, HHS*,
No. 16-930V, 2021 WL 839092 (Fed. Cl. Spec. Mstr. Jan. 4, 2021)................... 8
*aff'd*, 154 Fed. Cl. 640 (2021) ......................................................................... 8

*Moberly v. Sec'y, HHS*,
592 F.3d 1315 (Fed. Cir. 2010)........................................................................ 1

*Stratton v. Merck & Co., Inc.*,
No. 2:21-cv-02211-RMG (D.S.Car.) ................................................................ 7

### FEDERAL STATUTES, RULES, AND REGULATIONS

21 C.F.R. § 201.56......................................................................................... 4

21 C.F.R. § 201.57.......................................................................................4, 5

21 C.F.R. § 312.21......................................................................................... 4

21 U.S.C. § 355 ............................................................................................. 4

21 U.S.C. § 360c............................................................................................. 4

42 U.S.C. § 300aa-11...................................................................................... 3

42 U.S.C. § 300aa-12...................................................................................... 1

42 U.S.C. § 300aa-15...................................................................................... 3

42 U.S.C. § 300aa-21...................................................................................... 3

Respondent-Appellant, the Secretary of Health and Human Services (the "Secretary"), hereby submits the following reply brief in response to the Brief of Petitioner-Appellee (hereinafter "Red Br."):

# I. ARGUMENT

## A. THE CHIEF SPECIAL MASTER'S DECISION CONTAINS LEGAL ERROR.

### 1. The Court Owes No Deference To The Chief Special Master's Reasonable Basis Finding Because He Applied An Incorrect Legal Standard To The Evidence.

Stratton is correct that, on questions of fact, the Court's precedent mandates that it apply a deferential standard of review to the special masters' findings. *See* Red Br. at 10-11. However, on questions of law the Court owes the special master no such deference, and if the special master has committed error the Court is authorized to set aside the special master's findings and conclusions. *See* 42 U.S.C. § 300aa-12(e)(2)(B) (authorizing the CFC to set aside a special master's findings of fact and conclusions of law if found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and to issue its own findings of fact or conclusions of law); *Moberly v. Sec'y, HHS*, 592 F.3d 1315, 1321 (Fed. Cir. 2010) (noting that this Court applies "the same standard that [the CFC] applies in reviewing the decision of the special master").

Here, as the Secretary has previously argued, the Chief Special Master failed to properly apply the reasonable basis standard handed down by this Court, in that he provided *no* analysis of the evidence or explanation for how Stratton presented "more than a mere scintilla" of evidence pertaining to each element of her prima facie case. *See* Brief of Respondent-Appellant (hereinafter "Blue Br.") at 20. Stratton does not really confront this aspect of the Secretary's argument, other than to assert without any supporting authority that "Special Masters need not go to the level of recitation contemplated in the Secretary's appeal." Red Br. at 23. But, the Secretary is not arguing for any specific "level of recitation."

Rather, the Secretary is arguing that a special master's reasonable basis determination must, at a minimum: (1) demonstrate that the special master considered the relevant objective evidence, and (2) sufficiently explain the basis upon which the special master found that the evidence surpassed the "more than a mere scintilla" threshold with respect to each element of the claim. The Chief Special Master's decision in this case falls short on both counts. The Court should therefore vacate the decision and, because there is no reliable, objective evidence in the record that the Gardasil vaccine in fact caused Stratton's alleged injuries, find that Stratton is not eligible for an award of fees and costs in this case.

**2. The Same Reasonable Basis Standard Applies No Matter How A Petitioner Exits The Vaccine Program.**

The Secretary agrees with Stratton (*see* Red Br. 2-3) that the Vaccine Act permits a petitioner to withdraw her petition in order to pursue a civil action against a third party. 42 U.S.C. §§ 300aa-11(a)(2)(A), 21(b)(1). But petitioners, like Stratton, who do so without exhausting their remedies under the Vaccine Act (often without filing all of the records required by the Act) are not then entitled to preferential treatment when it comes to determining whether they established a reasonable basis for their claims for purposes of recovering their fees and costs. Like any other petitioner who comes through the Vaccine Program, petitioners who withdraw their claims, and then seek attorneys' fees and litigation costs incurred in connection with bringing their petitions, are subject to the same reasonable basis standard as articulated by this Court. *See* 42 U.S.C. § 300aa-15(e) (making a showing of reasonable basis a legal prerequisite to <u>any</u> award of attorneys' fees and costs sought under the Vaccine Act).

Here, the Chief Special Master erred when he effectively granted Stratton a presumption that her claim had a reasonable basis – an approach he has indicated he intends to take in more than two hundred other pending cases filed and either withdrawn or dismissed by Stratton's counsel so the petitioners can pursue civil actions against Merck. The Court should make clear that these petitioners are not

excused from establishing a reasonable basis for their claims, and the Chief Special Master is not excused from engaging in a meaningful reasonable basis analysis, simply because the petitioners choose to withdraw their claims from the Program.

## B. STRATTON HAS FAILED TO PROVIDE RELIABLE, OBJECTIVE EVIDENCE OF CAUSATION.

### 1. The Adverse Reactions Listed On The Gardasil Product Insert That Stratton Cites Occurred Days, Not Months, Post-Vaccination.

Stratton argues that the Gardasil product insert establishes a reasonable basis for her claim because she complained of headaches, nausea, dizziness, abdominal pain, and myalgias, which are "all listed in the Gardasil product insert as symptoms occurring after Gardasil vaccination." Red Br. at 15. Stratton's argument is incomplete and, therefore, misleading.

Before a manufacturer (like Merck) can market a prescription drug (like Gardasil), the Food and Drug Administration ("FDA") is responsible for determining whether the drug is both effective and safe. *See* 21 U.S.C. §§ 355(a), 360c(a)(1)(C). Prior to approving a drug for market, the FDA requires manufacturers to conduct a series of clinical trials. 21 C.F.R. § 312.21. The process of FDA approval also includes a review of the drug's labeling; the FDA defines the content and format of the label. 21 C.F.R. § 201.56. The label (or product insert) must present information about adverse reactions reported in clinical trials. 21 C.F.R. § 201.57(a)(11). An "adverse reaction" is defined as "an

undesirable effect, reasonably associated with the use of a drug, that may occur as part of the pharmacological action of the drug or may be unpredictable in its occurrence." 21 C.F.R. § 201.57(c)(7). The requirement to report "adverse reactions" is limited to "only those adverse events for which there is some basis to believe there is a causal relationship between the drug and the occurrence of the adverse event." *Id*. Therefore, the Secretary acknowledges that information provided in the section of the product insert discussing adverse reactions reported in clinical trials comprises implied notice from the vaccine manufacturer that "there is some basis to believe" the vaccine caused the listed reaction.

Stratton is correct that headaches, nausea, dizziness, abdominal pain, and myalgias are listed as reported adverse reactions on the Gardasil product insert. What Stratton fails to acknowledge is that the product insert identifies a specific time frame in which those adverse events occurred – <u>within fifteen days post-vaccination.</u> *See* Appx101 (Table 2); Appx104 (Table 4). Thus, the product insert only provides some evidence of causation when the symptoms occur within that specific time frame following vaccination.

In this case, Stratton relies on complaints in the record of headaches and dizziness (citing Appx58), nausea (citing Appx54), and abdominal pain (citing Appx60). *See* Red Br. at 14. However, each of the records Stratton relies on are

from July 2019, twenty months after her Gardasil vaccination. There is nothing in the submitted records to substantiate that Stratton experienced headaches, nausea, dizziness, abdominal pain, and myalgias in the fifteen days following her November 6, 2017 vaccination, even though she sought medical care for other issues during that same time period. *See* Appx 62, Appx68-Appx70 (visit four days post-vaccination for a "buzzing" in her ear that she thought was a bug); Appx71-Appx73 (visit one-week post-vaccination for a sore throat diagnosed as strep pharyngitis).

Stratton's affidavit does not fill this void. First, Stratton makes no mention of her significant pre-vaccination medical history. Appx139-142. Additionally, she alleges events following the vaccination, including chronic headaches, severe fatigue, and dizziness, *see* Appx139-142, but offers no citation or evidence to support these events having occurred in temporal proximity to the vaccination, nor does she attempt to reconcile these contentions with the contemporaneous records.[1]

---

[1] According to the docket for Stratton's civil action against Merck, available at https://advance.lexis.com/api/permalink/516c6572-589a-4026-afb1-5a1207a9cc22/?context=1519217 (last visited Nov. 1, 2023), the case was dismissed with prejudice by stipulation of the parties on June 17, 2022. It appears from the filings in that case that Stratton sought to delay her deposition by requesting a stay of the proceedings pending a ruling on consolidation of the

…(cont'd)

Given that there is no reliable evidence that Stratton experienced headaches, nausea, dizziness, abdominal pain, and myalgias in the fifteen days following her vaccination, the Gardasil product insert provides no support for her claim.

**2. The Medical Literature Provides No Reliable Support For Stratton's Claim.**

Stratton argues that postural orthostatic tachycardia syndrome ("POTS") is "well documented in medical literature as being triggered by the HPV vaccine [Gardasil]." Red Br. at 16. As the Secretary has previously noted, however, the medical literature submitted by Stratton has been consistently discredited in other Gardasil/POTS cases. Blue Br. at 29-30.

---

Merck MDL cases, but the court denied her request. The case was dismissed less than a month after the court denied Stratton's motion for a stay.

In its opposition to Stratton's motion for a stay, Merck argued:

> that these depositions will demonstrate that, to the extent that [Stratton] has any ongoing medical issues, those issues predated her vaccination with Gardasil and that contrary to [Stratton's] claims of being "unable to engage in normal activities that a young adult would enjoy" (Complaint at ¶ 355 (ECF No. 1)), [Stratton] has enjoyed study abroad programs in Costa Rica, snorkeling in Aruba, sightseeing trips in Spain, spending time in Las Vegas, and pursued many other extraordinary life-time adventures.

*Stratton v. Merck & Co., Inc.*, No. 2:21-cv-02211-RMG (D. S. Car.), Docket Entry No. 36, at 2-3.

Stratton now appears to hang her hat on two articles in particular: the Ozawa article (Appx173-Appx183) and the Mehlsen article (Appx222-Appx228). *See* Red Br. at 17-21. Neither article provides reliable evidence that Gardasil causes POTS.

The Ozawa article is one of the articles that the special masters have already considered and rejected. For instance, in *Hughes v. Sec'y, HHS*, No. 16-930V, 2021 WL 839092 (Fed. Cl. Spec. Mstr. Jan. 4, 2021), *aff'd*, 154 Fed. Cl. 640 (2021), the Chief Special Master noted:

> Researchers in Ozawa observed that affected vaccine recipients reported various symptoms, most of which were ascribed to orthostatic intolerance, CRPS [complex regional pain syndrome], and/or cognitive dysfunction. Ozawa itself, however, notes that CRPS occasionally develops in adolescent girls, and a questionnaire-based study performed during the same time period reported that a group of symptoms, including CRPS, which were seen in HPV-vaccinated girls, also occurred in Japanese girls with *no history* of HPV vaccination — not to mention the study's other acknowledged limitations that make it comparable in unreliability to Brinth (e.g., lack of control group, self-selection of studied subjects, etc.).

2021 WL 839092 at *14 (internal citations omitted, emphasis in original). After hearing testimony from experts for both parties, the Chief Special Master concluded that "many of these items of literature (e.g., Brinth or Ozawa) are facially deficient and unreliable evidence establishing a link between POTS, or other allegedly-autoimmune conditions, and the HPV vaccine." *Id.* at *31.

The Mehlsen article is a newer article that does not yet appear to have been addressed by a special master in a published decision. Notably, the Mehlsen article was submitted in this case without any explication from an expert as to its supposed probative value – all Stratton has provided about the article is the argument of her counsel. *See* Red Br. at 18-21. Like Ozawa, the Mehlsen article has many notable weaknesses acknowledged by the authors themselves, including that it was not placebo-controlled, prospective, or double-blinded, and lacked an adequate control group. Appx226. Moreover, while the authors concluded that their study showed "that girls and young women with probable side effects to HPV-vaccination have symptoms and biological markers compatible with an autoimmune disease," the diseases they identified as being comparable were myalgic encephalomyelitis ["ME"]/chronic fatigue syndrome ["CFS"] and "subsets of long-COVID," not POTS. *Id.* Finally, the study's lead author, Jesper Mehlsen, M.D., has served as an expert for petitioners in at least two Vaccine Program cases. *See Argiri v. Sec'y, HHS*, No. 17-1715V, 2022 WL 16583940 (Fed. Cl. Spec. Mstr. Oct. 11, 2022), and *Brady v. Sec'y, HHS*, No. 19-973V, 2022 WL 17821159 (Fed. Cl. Spec. Mstr. Nov. 14, 2022). In *Brady*, Dr. Mehlsen received $10,500.00 for his services. *Id.* at *3. Yet, Dr. Mehlsen did not disclose these obvious conflicts of interest in the article. *See* Appx226 ("Declaration of competing interest"). The

Mehlsen article, like petitioner's other literature, is simply too unreliable to establish a reasonable basis for petitioner's claim.

## C. THE BRIEFING IN THIS APPEAL EXPOSES THE PROBLEM WITH THE CHIEF SPECIAL MASTER'S DECISION.

The fact that the parties are asking this Court to weigh the evidence and make a reasonable basis determination is proof that the Chief Special Master's decision cannot stand. In her brief, after discussing at length the product insert and medical literature, Stratton simply states that "Chief Special Master Corcoran had all of this information at the time he made his decision on reasonable basis." Red Br. at 21. That may be true, but what is also true is that no one except the Chief Special Master knows what evidence he considered, and upon what basis he determined that it satisfied the Court's reasonable basis standard.

The Secretary is not suggesting that the special masters need to issue decisions on reasonable basis that contain the same level of detail they include in their decisions on the merits. However, in those cases in which the Secretary raises a reasonable basis objection – which is a very small percentage of cases brought under the Act – the specials masters should be required to issue decisions that contain sufficient detail such that the parties can understand the special master's reasoning (to be able to evaluate whether to bring similar objections in future cases), and a reviewing court can resolve any appeal without itself having to

engage in independent fact-finding, as the CFC did below, and which the parties are asking this Court to do here.

## II. CONCLUSION

For the reasons set forth above and in the Secretary's opening brief, the Secretary requests that the Court vacate the decisions below and deny Stratton's request for an award of attorneys' fees and costs in this case.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

C. SALVATORE D'ALESSIO
Director
Torts Branch, Civil Division

HEATHER L. PEARLMAN
Deputy Director
Torts Branch, Civil Division

s/Voris E. Johnson, Jr.
VORIS E JOHNSON, JR.
Senior Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, D.C. 20044-0146
Tel: (202) 616-4133
Email: voris.johnson@usdoj.gov

Date: November 9, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify, based on the line count of the word-processing system used to prepare this brief, that the brief contains 2,899 words and 379 lines of text, and is, therefore, in conformity with Fed. Cir. R. 32(b)(1).

/s/ Voris E. Johnson, Jr.
VORIS E. JOHNSON, JR.
Attorney for Respondent-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of November, 2023, the foregoing **REPLY BRIEF OF RESPONDENT-APPELLANT** was served electronically upon:

Andrew D. Downing
DOWNING, ALLISON & JORGENSON
3030 N. Central Avenue, Suite 507
Phoenix, AZ 85012
adowning@daj-law.com

/s/ Voris E. Johnson, Jr.
VORIS E. JOHNSON, JR.
Attorney for Respondent-Appellant

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.